**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| GARRETT STEPHENSON, *et al*., | **Case No. SA-22-cv-01296-XR** |
| Plaintiffs, | **(Lead Action)** |
| vs. | |
| | **CONSOLIDATED AND AMENDED CLASS** |
| RACKSPACE TECHNOLOGY, INC., | **ACTION COMPLAINT** |
| Defendant. | |
| | |
| Included Action: | **JURY TRIAL DEMANDED** |
| *Ondo, et al. v. Rackspace Technology, Inc.* Case No. SA-22-cv-01306-XR | |

*"We aim to be our customers' most trusted advisor . . . ."*

Rackspace Technology, Inc.'s Securities and Exchange Commission
Form 10K for year ending December 31, 2021

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

JURISDICTION AND VENUE ............................................................................4

NAMED PLAINTIFFS .........................................................................................4

DEFENDANT.......................................................................................................20

CLASS ACTION ALLEGATIONS .....................................................................21

CHOICE OF LAW FOR NATIONWIDE CLAIMS............................................24

COMMON FACTUAL ALLEGATIONS ............................................................25
    The Security Incident/Cyber-Attack ............................................................25
    Defendant Failed Response to the Security Incident ...................................28
    Defendant Collected/Stored Class Members' Sensitive Data......................29
    Defendant Had an Obligation to Protect the Sensitive Data........................30
    Value of the Relevant Sensitive Data ..........................................................34
    Reactions to the Security Incident/Data Breach ..........................................37

CLAIMS ON BEHALF OF THE NATIONWIDE CLASS AND ALL SUBCLASSES

    COUNT 1:    NEGLIGENCE...............................................................39
    COUNT 2:    BREACH OF IMPLIED CONTRACT ..........................44
    COUNT 3:    BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
                    AND FAIR DEALING ..................................................46
    COUNT 4:    UNJUST ENRICHMENT ...............................................47
    COUNT 5:    DECLARATORY JUDGMENT .....................................48

CLAIMS ON BEHALF OF THE STATE SUBCLASSES

    COUNT 6:    ALASKA PERSONAL INFORMATION PROTECTION ACT .....................50
    COUNT 7:    ALASKA CONSUMER PROTECTION ACT ...........................................51
    COUNT 8:    ARIZONA CONSUMER FRAUD ACT......................................................53
    COUNT 9:    CALIFORNIA CUSTOMER RECORDS ACT ...........................................56
    COUNT 10:   CALIFORNIA UNFAIR COMPETITION LAW .......................................57
    COUNT 11:   COLORADO SECURITY BREACH NOTIFICATION ACT......................59
    COUNT 12:   COLORADO CONSUMER PROTECTION ACT ......................................60
    COUNT 13:   FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ..........63
    COUNT 14:   GEORGIA SECURITY BREACH NOTIFICATION ACT..........................65
    COUNT 15:   GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT................66
    COUNT 16:   ILLINOIS PERSONAL INFORMATION PROTECTION ACT ..................68
    COUNT 17:   ILLINOIS CONSUMER FRAUD ACT......................................................70
    COUNT 18:   ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT.................72
    COUNT 19:   IOWA PERSONAL INFORMATION SECURITY BREACH
                    PROTECTION LAW.....................................................................74
    COUNT 20:   MASSACHUSETTS RIGHT TO PRIVACY .............................................75
    COUNT 21:   MISSOURI MERCHANDISE PRACTICES ACT .........................................76

COUNT 22:    NEBRASKA CONSUMER PROTECTION ACT ....................................................78
COUNT 23:    NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT........................79
COUNT 24:    NEW JERSEY CUSTOMER SECURITY BREACH DISCLOSURE
             ACT................................................................................................................82
COUNT 25:    NEW JERSEY CONSUMER FRAUD ACT ....................................................84
COUNT 26:    NEW YORK INFORMATION SECURITY BREACH AND
             NOTIFICATION ACT......................................................................................85
COUNT 27:    NEW YORK GENERAL BUSINESS LAW .......................................................86
COUNT 28:    OREGON CONSUMER IDENTITY THEFT PROTECTION ACT .............87
COUNT 29:    OREGON UNLAWFUL TRADE PRACTICES ACT.....................................89
COUNT 30:    PENNSYLVANIA UNFAIR TRADE PRACTICES AND
             CONSUMER PROTECTION LAW .............................................................91
COUNT 31:    TENNESSEE PERSONAL CONSUMER INFORMATION
             RELEASE ACT ................................................................................................94
COUNT 32:    TENNESSEE CONSUMER PROTECTION ACT ...........................................97
COUNT 33:    TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER
             PROTECTION ACT ........................................................................................98
COUNT 34:    VIRGINIA PERSONAL INFORMATION BREACH
             NOTIFICATION ACT ..................................................................................102
COUNT 35:    VIRGINIA CONSUMER PROTECTION ACT ...........................................103

**JURY DEMAND**.............................................................................................................**106**

**REQUEST FOR RELIEF**.................................................................................................**106**

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

The Representative Plaintiffs identified herein (collectively, "Representative Plaintiffs" or, simply, "Plaintiffs"), individually and on behalf of the classes/subclasses as also defined herein of similarly situated persons, allege the following against Defendant Rackspace Technology, Inc. ("Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## INTRODUCTION

1.      Representative Plaintiffs bring this class action against Defendant Rackspace Technology, Inc. ("Defendant") for its failure to properly secure and safeguard Representative Plaintiffs' and Class Members' personally identifiable information ("PII")[1] and/or other proprietary and/or highly confidential data (collectively, "Sensitive Data") stored within Defendant's information network, failure to maintain its Hosted Exchange environment so as to provide continuous email and customer service and/or failure to notify Representative Plaintiffs and Class Members of the outage/ransomware event purportedly discovered by Defendant on or about December 2, 2022 so as to, *inter alia*, not unreasonably interfere with Representative Plaintiffs' and Class Members' access to their Sensitive Data and maintain the confidentiality thereof.

2.      With this action, Representative Plaintiffs seek to hold Defendant responsible for the harms it caused, and will continue to cause, Representative Plaintiffs and thousands of similarly situated persons and businesses in the massive and preventable security incident purportedly discovered by Defendant on or about December 2, 2022 (the "Security Incident").

---

[1]   Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers). Personally identifiable information ("PII") and Personal Information as used in this Complaint are a subset of the Sensitive Data accesses by cybercriminals in connection with this Security Incident.

1

3.     Representative Plaintiffs further seek to hold Defendant responsible for not ensuring that its Hosted Exchange environment was maintained in a manner consistent with industry and other relevant standards, thereby allowing the infiltration of its systems by cybercriminals and access to highly sensitive, valuable and, oftentimes, personal information thereby.

4.     Starting on or about Friday, December 2, 2022, thousands of Rackspace customers discovered (and then many began reporting) connectivity issues to their email Exchange environments. By the droves, Rackspace customers from around the nation began contacting Rackspace for an explanation, only to be told (when they could reach a representative at all) that Defendant was experiencing an "issue" with its Hosted Exchange environments, that these customers would be unable to access their emails for this reason, that Rackspace had no estimate for the expected duration of the so-called outage, and nothing more. Increasingly throughout the day and beyond, Rackspace customers found it increasingly difficult to reach a Rackspace representative at all, oftentimes being placed on hold for several hours, just to receive no meaningful information or compelling them to hang up the telephone preemptively out of sheer frustration. Eventually, Rackspace representatives stopped answering telephones altogether and stopped responding to online requests.

5.     Rather than honoring its promise to be its customers' "most trusted advisor," it utterly failed to let its customers know that a data breach and occurred and that customer data was compromised, portraying the event throughout that weekend as mere "connectivity issues." Indeed, while Rackspace acknowledged that the event constituted a "major disruption" for its clients—clients for whom it had previously guaranteed 100% connectivity—Defendant continued over the course of the day (and beyond) to downplay the severity of the event.

6.     At 8:19 that evening, Rackspace announced a "significant failure" in its Hosted Exchange environment, purportedly shut down the environment altogether and encouraged many of its customers to migrate their email service to Microsoft 365—indicating that this migration would be required before their mail flow would again work properly. Countless consumers responded by reconfiguring their emails systems, calling in employees on the weekend for assistance, contacting their own customers to inform them that emails may not be recoverable at all, incurring tremendous

expense, lost business opportunities, and other damages as set forth herein. Unfortunately, the reconfiguration of customers emails protocols to Microsoft 365, even when a semi-viable option to sync and/or send new mail, oftentimes failed to provide access to the emails already generated, leaving Rackspace customers and their businesses largely unable to access email histories, attachments to their emails, etc.

7.      At 1:57 the following morning, the situation became increasingly dire. While countless Class Members were working around the clock to reestablish connectivity, workstation by workstation, Rackspace announced that the outage was the result of a "security incident." Later, on December 5, 2022, Rackspace acknowledged that the security incident was, in fact, a "ransomware"[2] event. As a result of its poor communication therewith, many Class Members only found out about the malicious root cause of the event from press articles or sources other than Defendant. Indeed, even while Class Members were scrambling to reinstate email service, reconfigure their business and personal email accounts away from Rackspace, access to Defendant's customer support was either nonexistent or extremely difficult, further exacerbating Class Members' inability to triage the problem and/or determine how to protect the integrity of their Sensitive Data. As of the filing of this amended Complaint, countless Class Members remain unable to access their valuable, time-sensitive and/or personal information. What's more, while much of the damage is already done, the full fate of Class Members' so-called "secure" email accounts and the Sensitive Data located therein is anyone's guess.

8.      The severity of this breach is high, affecting thousands of businesses around the United States, their owners/members, their employees, their clients–many of whom have been, in turn, denied time-critical services (e.g., unwitting law firm clientele needing immediate legal action, investors

---

[2]    This lawsuit exists, in part, because cybercriminals unsurprisingly targeted a company in the business of storing/maintaining personal information, stealing the valuable personal information and demanding payment to supposedly delete the data that they stole. Such a payment, or a "ransom," is paid by companies who acquiesce to data publication extortion demands when they are trying to prevent the public, victims, and shareholders from learning about a data breach. Once such data is stolen from its servers, companies will sometimes pay the ransom to get it back and/or in hopes that the stolen data will be "deleted." *But see,* Brian Krebs, Why Paying to Delete Stolen Data is Bonkers, Krebs on Security (Nov. 20, 2020), https://krebsonsecurity.com/2020/11/why-paying-to-delete-stolen-data-is-bonkers/

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

seeking effectuation of market sensitive transactions, patients unable to access healthcare information). The lost revenue, extraordinarily increased costs, lost business opportunities, damage to their clients' trust, and the continued and future reaching efforts required to determine the volume of lost emails/documents/transactions is almost immeasurable. Indeed, the crippling effect of the security incident may only be overshadowed by the damages attendant to the cyber criminals' unlawful use of this sensitive information–the full impact of which may not be known for years.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Nationwide Class and each subclass, and at least one other Class Member is a citizen of a state different from Defendant.

10.     Supplemental jurisdiction to adjudicate issues pertaining to the state law of various states identified herein is proper in this Court under 28 U.S.C. § 1367.

11.     Defendant is headquartered and routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

12.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiffs' claims took place within this District, and Defendant does business in this Judicial District.

## NAMED PLAINTIFFS

13.     The Representative Plaintiffs identified below bring this action on behalf of themselves and those similarly situated both across the United States and within their State of

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

residence/incorporation. As with the rest of the victims of the Security Incident, Defendant, through its actions described herein, leaked, disbursed, and furnished their valuable Sensitive Data (as defined herein) to unknown cyber criminals, thus causing them present, immediate, imminent, and continuing increased risk of harm.

14.    All Representative Plaintiffs contracted with Defendant to receive email hosting among other services.

15.    Defendant received, stored and/or provided access to Representative Plaintiffs of their Sensitive Data in connection with the support services it provides. As a result, Representative Plaintiffs' information was among the data accessed by an unauthorized third party and/or made unavailable during the Security Incident.

16.    Representative Plaintiffs received—and were "consumers" for purposes of obtaining services from Defendant within their respective state(s).

17.    At all times herein relevant, Representative Plaintiffs are and were members of each of the Nationwide Class. The Representative Plaintiffs of various the states identified herein were, at all times herein relevant, members of each respective subclass.

## ALASKA

18.    Plaintiff Bianca Frank ("Frank") is and was, at all times relevant, a resident and citizen of the State of Alaska. Her business information was lost in the Rackspace data breach. Frank is the owner of Bianca Frank Design. Frank verified through Rackspace's data breach response website that her business information was compromised. Before the announcement of the breach, Frank purchased Rackspace's email correspondence hosting service. Frank did not receive the benefit of her purchase because Rackspace's inadequate data security practices subjected Frank to the precise type of harm that she was seeking to protect against. Rackspace also violated its agreement with Frank to safeguard the privacy and security of her information. Frank would not have purchased this product had she known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Frank has been unable to recover the data deleted, has spent time and money searching for the deletion and

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. This deletion has cost Frank at least 5 days of lost production, many delays in deadlines, as well as potential loss of client revenue since discovering this incident on December 3, 2022. Frank has also had to purchase an entirely new email provider due to the lack of communication from Defendant.

## ARIZONA

19.    Plaintiff Money Savvy Generation, Inc. ("MSG") is a business operating in Arizona. It lost information in the Rackspace Security Incident. MSG verified through Rackspace's Security Incident response website that its business information was compromised. Before the announcement of the incident, MSG purchased Rackspace's email correspondence hosting service. MSG did not receive the benefit of its purchase because Rackspace's inadequate data security practices subjected MSG to the precise type of harm that it was seeking to protect against. Rackspace also violated its agreement with MSG to safeguard the privacy and security of MSG's information. MSG would not have purchased this product had it known of Rackspace's inadequate data security practices. In addition, as a result of the incident, MSG has been unable to recover the data deleted, has spent time and money investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed economically as a result. MSG is already aware of many added expenses due to time lost, having to increase payroll to fix everything, as well as revenue loss of 6 days of business revenue.

## CALIFORNIA

20.    Plaintiff Kurt Fainman ("Fainman") is and was, at all times relevant, a resident and citizen of the State of California. Fainman is a victim of the Security Incident. Fainman purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein. Fainman did not receive the benefit of his purchase due to the Security Incident. Defendant also violated its agreement with Fainman to

safeguard the security and privacy of his information. Had Fainman known about Defendant's inadequate security practices, he would not have purchased its products and/or used its services. Additionally, as a result of the breach, Fainman spent money, time, and effort managing and monitoring his business due to the negligence of Defendant.

21.     Plaintiff Selerum, Inc. ("Selerum") is a C Corporation in the State of California, and its business information was lost in the Rackspace Security Incident. Selerum verified through Rackspace's Security Incident response website that its business information was compromised. Before the announcement of the incident, Selerum purchased Rackspace's email correspondence hosting service. Selerum did not receive the benefit of its purchase because Rackspace's inadequate data security practices subjected Selerum to the precise type of harm that it was seeking to protect against. Rackspace also violated its agreement with Selerum to safeguard the privacy and security of its information. Selerum would not have purchased this product had it known of Rackspace's inadequate data security practices. In addition, as a result of the incident, Selerum has been unable to recover the data deleted, has spent time and money searching for the deletions and opportunities for recovery thereof, and has otherwise been harmed economically as a result. Selerum is already aware of thousands of dollars' worth of profits lost and the ability to bill clients since the December 2, 2022, incident, which will only continue to increase.

## COLORADO

22.     Plaintiff Zachary Tice ("Tice") is and was, at all times relevant a citizen and resident of the State of Colorado. His business, Raven Feather Property Management lost information in the Rackspace Security Incident. Tice is the owner of Raven Feather Property Management. Tice verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the incident, Tice purchased Rackspace's email correspondence hosting service. Tice did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Tice to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Tice to safeguard the privacy and security

of his information. Tice would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Tice has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. In addition to all the lost emails and documents for his company, he also lost many receipts which he needs in order to be reimbursed for travel expenses for the year.

## **FLORIDA**

23.     Plaintiff Chris Ondo ("Ondo") is and was, at all times relevant, a resident and citizen of the State of Florida. His business information was lost in the Rackspace Security Incident. Ondo verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the incident, Ondo purchased Rackspace's email correspondence hosting service. Ondo did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Ondo to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Ondo to safeguard the privacy and security of his information. Ondo would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the incident, Ondo has been unable to recover the data deleted, has spent time and money investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Ondo had also reached out to Rackspace early in 2022 in worry that its data had been compromised, but his concerns were ignored.

24.     Plaintiff Michael Sayles ("Sayles") is and was, at all times relevant, a resident and citizen of the State of Florida. His business, StoneTower Search, lost information in the Rackspace Security Incident. Sayles verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the breach, Sayles purchased Rackspace's email correspondence hosting service. Sayles did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Sayles to the precise type of harm

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

that he was seeking to protect against. Rackspace also violated its agreement with Sayles to safeguard the privacy and security of his information. Sayles would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Sayles has been unable to recover the data deleted, has spent time and money on hiring IT consultants investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Sayles is already aware of thousands of dollars' worth of profits lost, as well as the loss of professionalism, and long-standing business relationships since the December 2, 2022 breach.

25.     Plaintiff Terence Channon ("Channon") is and was, at all times relevant, a resident and citizen of the State of Florida. His business, NewLead, LLC, lost information in the Rackspace Security Incident. Channon verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the breach, Channon purchased Rackspace's email correspondence hosting service. Channon did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Channon to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Channon to safeguard the privacy and security of his information. Channon would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Channon has been unable to recover the 15 years' worth of data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Channon is already aware of thousands of dollars' worth of profits lost, as well as the loss of important contacts, and the ability to bill for the dozens of hours of labor his business could not bill to his clients since the December 2, 2022, breach.

26.     Plaintiff Victor Orly ("Orly") is and  was, at all times relevant, a resident and citizen of the State of Florida. Orly is a victim of the Security Incident. Orly's company, Victor Orly Consulting, LLC purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein. Orly did not receive the benefit of his purchase due to the Security Incident. Rackspace Technology also violated its agreement with

Orly to safeguard the security and privacy of his information. Had Orly known about Rackspace Technology's inadequate security practices, he would not have purchased its products. The Security Incident has caused financial losses to Orly based on lost work from clients due to the inability to access emails.

27.    Plaintiff Thomas Berhardt ("Berhardt") is and was, at all times relevant, a resident and citizen of the State of Florida. His business, PDITEC LLC, lost information in the Rackspace Security Incident. Plaintiff Berhardt verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the breach, Berhardt purchased Rackspace's email correspondence hosting service. Berhardt did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Berhardt to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Berhardt to safeguard the privacy and security of his information. Berhardt would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Berhardt has been unable to recover the data deleted, has spent time and money searching for the deleted data and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. This deletion has lost Berhardt access not only to his company emails, but also his important contacts and calendar containing upcoming appointments.

28.    Plaintiff Frank Moten ("Moten") is and was, at all times relevant, a resident and citizen of the State of Florida. His business, OurGig.com, LLC lost information in the Rackspace Security Incident. Moten verified through Rackspace's Security Incident response website that business information for Moten's company was compromised. Before the announcement of the breach, Moten purchased Rackspace's email correspondence hosting service. Moten did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Moten to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Moten to safeguard the privacy and security of his information. Moten would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Moten has been unable to recover the data deleted, has spent his valuable time investigating the cause

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Moten has already lost thousands of dollars in revenue since December 2, 2022, which he only expects to increase.

## GEORGIA

29.    Plaintiff Thomas Ahern ("Ahern") is and  was, at all times relevant, a resident and citizen of the State of Georgia. His business, Convey Holdings, lost information in the Rackspace Security Incident. Ahern verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the breach, Ahern purchased Rackspace's email correspondence hosting service. Ahern did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Ahern to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Ahern to safeguard the privacy and security of his information. Ahern would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Ahern has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. In addition, Ahern and his technical team put in up to 20 hours figuring out the issue and learning how to migrate from one system to another. Ahern is currently paying for both the new system his business has had to migrate to, as well as Defendant's Covered Product(s) because they still do not have access to all their old emails in order to migrate them. Defendant has not provided any timeline regarding if they will ever be able to restore the old emails. After figuring out the migration of all new incoming emails, 11 staff members spent up to five hours executing this, as well as resetting all their devices with the new system, and contacting clients and strategic partners alerting them of the 4.5 days of lost communication. This added up to over two days of lost productivity for Ahern's business.

## ILLINOIS

30.    Plaintiff Steven Glazer ("Glazer") is and  was, at all times relevant a citizen and resident

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

of the State of Illinois. His business, SKW Capital Management, LLC, lost information in the Rackspace Security Incident. Glazer is the owner of SKW Capital Management, LLC. Glazer verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the incident, Glazer purchased Rackspace's email correspondence hosting service. Glazer did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Glazer to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Glazer to safeguard the privacy and security of his information. Glazer would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Glazer has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Glazer had to spend over 30 hours on hold with Rackspace, and still has no timeline of when or if he will recover his lost data.

## **IOWA**

31.    Plaintiff ITS SIGNS LLC ("SIGNS") is a company in the State of Iowa, and its business information was lost in the Rackspace Security Incident. SIGNS verified through Rackspace's Security Incident response website that its Business Information was compromised. Before the announcement of the incident, SIGNS purchased Rackspace's email correspondence hosting service. SIGNS did not receive the benefit of its purchase because Rackspace's inadequate data security practices subjected SIGNS to the precise type of harm that it was seeking to protect against. Rackspace also violated its agreement with SIGNS to safeguard the privacy and security of its information. SIGNS would not have purchased this product had it known of Rackspace's inadequate data security practices. In addition, as a result of the breach, SIGNS has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for recovery thereof, and has otherwise been harmed economically as a result.

## MASSACHUSETTS

32.     Plaintiff Gregg Snyder ("Snyder") is and  was, at all times relevant, a resident and citizen of the State of Massachusetts. Snyder is a victim of the Security Incident. Snyder's business, Energy Applications and Systems (also serving herein as a Representative Plaintiff) purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein. Snyder did not receive the benefit of his purchase due to the Security Incident. Rackspace Technology also violated its agreement with Snyder to safeguard the security and privacy of his information. Had Snyder known about Rackspace Technology's inadequate security practices, he would not have purchased its products. Additionally, as a result of the breach, Snyder spent money, time, and effort managing and monitoring his business due to the negligence of Rackspace Technology.

## MISSOURI

33.     Plaintiff Michael Hogan ("Hogan") is and  was, at all times relevant, a resident and citizen of the State of Missouri. His business, Freedom-14 Camp, lost information in the Rackspace data breach. Hogan verified through Rackspace's data breach response website that his business information was compromised. Before the announcement of the breach, Hogan purchased Rackspace's email correspondence hosting service. Hogan did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Hogan to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Hogan to safeguard the privacy and security of his information. Hogan would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Hogan has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Hogan is already aware of many important deadlines being missed, as well as the loss of important contacts, dates calendared, and potential clients. Hogan as a result fears for his offices'

13

reputation due to this massive loss of data since the December 2, 2022, breach.

## NEBRASKA

34.     Plaintiff Optimum Data, Inc. ("Optimum") is a company in the State of Nebraska, and its business information was lost in the Rackspace Security Incident. Optimum verified through Rackspace's Security Incident response website that its business information was compromised. Before the announcement of the incident, Optimum purchased Rackspace's email correspondence hosting service. Optimum did not receive the benefit of its purchase because Rackspace's inadequate data security practices subjected Optimum to the precise type of harm that it was seeking to protect against. Rackspace also violated its agreement with Optimum to safeguard the privacy and security of its information. Optimum would not have purchased this product had it known of Rackspace's inadequate data security practices. In addition, as a result of the incident, Optimum has been unable to recover the data deleted, has spent time and money investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed economically as a result.

## NEW JERSEY

35.     Representative Plaintiff Rina Ne'eman ("Ne'eman") is and  was, at all times relevant a citizen and resident of the State of New Jersey. Her business, legaltrans.com, lost information in the Rackspace Security Incident. Ne'eman is the owner of legaltrans.com. Ne'eman verified through Rackspace's Security Incident response website that her business information was compromised. Before the announcement of the incident, Ne'eman purchased Rackspace's email correspondence hosting service. Ne'eman did not receive the benefit of her purchase because Rackspace's inadequate data security practices subjected Ne'eman to the precise type of harm that she was seeking to protect against. Rackspace also violated its agreement with Ne'eman to safeguard the privacy and security of her information. Ne'eman would not have purchased this product had she known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Ne'eman has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for

14

recovery thereof, and has otherwise been harmed both personally and economically as a result. Ne'eman had to spend numerous hours unable to focus on her work attempting to find all her lost emails, which added additional stress since she was in the midst of selling the company.

## NEW YORK

36.     Representative Plaintiff Liquid Asset LLC ("Liquid") is a company in the State of New York, and its business information was lost in the Rackspace Security Incident. Liquid verified through Rackspace's Security Incident response website that its business information was compromised. Before the announcement of the incident, Liquid purchased Rackspace's email correspondence hosting service. Liquid did not receive the benefit of its purchase because Rackspace's inadequate data security practices subjected Liquid to the precise type of harm that it was seeking to protect against. Rackspace also violated its agreement with Liquid to safeguard the privacy and security of its information. Liquid would not have purchased this product had it known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Liquid has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for recovery thereof, and has otherwise been harmed economically as a result. In total so far, after spending 24 hours on hold with Rackspace, Liquid has lost all emails before January 1, 2022, lost out on an important business deal, lost personal voicemails, and has been subject to spam and fraudulent calls.

37.     Plaintiff Christian Carbone ("Carbone") is and  was, at all times relevant a resident and citizen of the State of New York. His business, Tech Steel & Materials, LLC lost information in the Rackspace Security Incident. Carbone verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the incident, Carbone purchased Rackspace's email correspondence hosting service. Carbone did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Carbone to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Carbone to safeguard the privacy and security of his information. Carbone would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition,

as a result of the incident, Carbone has been unable to recover the data deleted, has spent time and money investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Carbone is already aware of significant lost profits–due to the lucrative business he runs selling aircrafts and aerospace metals, and losing communication regarding important contracts, including government contracts.

## OREGON

38.    Plaintiff Richard Freimark ("Freimark") is and  was, at all times relevant, a citizen and resident of the State of Oregon. His business, Meridian Trust Real Estate Services, Inc. lost information in the Rackspace Security Incident. Freimark verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the incident, Freimark purchased Rackspace's email correspondence hosting service. Freimark did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Freimark to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Freimark to safeguard the privacy and security of his information. Freimark would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Freimark has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for recovery thereof, and has, otherwise, been harmed both personally and economically as a result.

## PENNSYLVANIA

39.    Plaintiff Matt Beerer ("Beerer") is and  was, at all times relevant, a resident and citizen of the State of Pennsylvania. Beerer is a victim of the Security Incident. Beerer's company, Precision Personnel, LLC purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein. Beerer did not receive the benefit of his purchase due to the Security Incident. Rackspace Technology also violated its agreement with Beerer to safeguard the security and privacy of his information. Had Beerer known

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

about Rackspace Technology's inadequate security practices, he would not have purchased its products. Due to the breach, Beerer's business has suffered financial losses due to the inability to send or receive correspondence from clients.

## TENNESSEE

40.    Plaintiff Leneiva Head ("Head") is and  was, at all times relevant, a resident and citizen of the State of Tennessee. Head is a victim of the Security Incident. Head is the owner of Welcome Home Realty. Head verified through Rackspace's data breach response website that her business information was compromised. Before the announcement of the breach, Head purchased Rackspace's email correspondence hosting service. Head did not receive the benefit of her purchase because Rackspace's inadequate data security practices subjected Head to the precise type of harm that she was seeking to protect against. Rackspace also violated its agreement with Head to safeguard the privacy and security of her information. Head would not have purchased this product had she known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Head has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. This deletion has lost Head countless hours to mitigate losses, modify records, manage the impact on her brand, as well as attempt to maintain data retention per state guidelines.

## TEXAS

41.    Plaintiff Garrett Stephenson ("Stephenson") is and was, at all times relevant, a resident and citizen of the State of Texas. Representative Plaintiff Garrett Stephenson is a victim of the Security Incident. Representative Plaintiff Gateway Recruiting, LLC is an executive recruiting firm and was, at all relevant times herein, based in New Braunfels, Texas. Representative Plaintiff Gateway Recruiting, LLC is a victim of the Security Incident. Representative Plaintiff Garrett Stephenson is the President of Gateway Recruiting, LLC.

42.    At approximately 3:00 AM (CT) on December 3, 2022, Representative Plaintiff

17

Stephenson observed that no emails were arriving on his Defendant-hosted email account(s). Though a series of steps to troubleshoot the situation, Representative Plaintiff Stephenson first changed his password, to no avail. Upon reviewing the status of the Rackspace server, Representative Plaintiff Stephenson noted that the Hosted Exchange was off-line, with no other provided updates other than that the Exchange was having "issues." At approximately 3:30 AM (CT) and, again, at 4:00 AM (CT) on December 3, 2022, Representative Plaintiff Stephenson telephoned, reached and spoke to a representative of Defendant. During the second contact at 4:00 AM (CT), Defendant's representative told Representative Plaintiff Stephenson that Defendant had suffered a security "breach" and that no other notice (beyond the website information) had been made available about it to the public.

43.    Thereafter, Representative Plaintiff Stephenson tried again reach a support representative but has been unsuccessful since Defendant's technical support telephone number simply rings for hours and Defendant has shut down its support chat feature. As additional interim steps, Representative Plaintiff Stephenson, so as to maintain operability of co-Representative Plaintiff Gateway Recruiting, LLC, for his/its own benefit, and for the benefit of his/their numerous clients (not to mention so as to maintain the confidential nature of these Representative Plaintiffs' and their clients' Sensitive Data), spent considerable time (i.e., scores of hours) responding to the Security Incident. These steps included calling employees and asking them to come into the office so as to proactively back up what data existed on their local machines, advising them to change all passwords, moving to a Microsoft 365 hosting solution, repointing the company's domain away from Rackspace to Microsoft, etc. Indeed, the cost (employee time, loss of data, etc.) was extraordinary and the incurrence of such and other costs will continue as these Representative Plaintiffs continue to discover the full scope of the loss/inaccessible data. At present, it appears that years of data (and associated work to accumulate it) has been lost.

44.    Plaintiff Joey Loranc ("Loranc") is and was, at all times relevant, a resident and citizen of the State of Texas. His business, Cutco Concrete, lost information in the Rackspace Security Incident. Loranc verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the breach, Loranc purchased

Rackspace's email correspondence hosting service. Loranc did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Loranc to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Loranc to safeguard the privacy and security of his information. Loranc would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Plaintiff Loranc has been unable to recover the data deleted, has spent time and money on hiring IT consultants investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

45.     Plaintiff Don Wyne ("Wyne") is and was, at all times relevant, a resident and citizen of the State of Texas. Wyne is a victim of the Security Incident. Wyne purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein. Wyne did not receive the benefit of his purchase due to the Security Incident. Rackspace Technology also violated its agreement with Wyne to safeguard the security and privacy of his information. Had Wyne known about Rackspace Technology's inadequate security practices, he would not have purchased its products. Wyne has also faced financial, physical, and emotional damages, in addition to damage to his reputation. Due to the breach, he has lost hundreds of hours of work, as well as private information, such as medical records.

46.     Plaintiff Ryan Hess ("Hess") is and was, at all times relevant, a citizen and resident of the State of Texas. His business, Greatmail LLC, lost information in the Rackspace data breach. Hess verified through Rackspace's data breach response website that his business information was compromised. Before the announcement of the breach, Hess purchased Rackspace's email correspondence hosting service. Hess did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Hess to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Hess to safeguard the privacy and security of his information. Hess would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Hess has been unable to recover the data deleted, has spent time and money searching for the deletion and opportunities for

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

recovery thereof, and has otherwise been harmed both personally and economically as a result. This deletion has cost Hess 20-30 hours a week in free service of his clients due to this incident since the discovery on December 2, 2022. It is costing him thousands of dollars in lost labor as well as putting at risk relationships with clients.

## **VIRGINIA**

47.     Plaintiff Tom Cafferty ("Cafferty") is and was, at all times relevant, a resident and citizen of the State of Virginia. His business, Cafferty Commercial Real Estate, lost information in the Rackspace Security Incident. Cafferty verified through Rackspace's Security Incident response website that his business information was compromised. Before the announcement of the breach, Cafferty purchased Rackspace's email correspondence hosting service. Cafferty did not receive the benefit of his purchase because Rackspace's inadequate data security practices subjected Cafferty to the precise type of harm that he was seeking to protect against. Rackspace also violated its agreement with Cafferty to safeguard the privacy and security of his information. Cafferty would not have purchased this product had he known of Rackspace's inadequate data security practices. In addition, as a result of the breach, Cafferty has been unable to recover the data deleted, has spent time and money on hiring IT consultants investigating the cause for 30 hours searching for the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result. Cafferty claims that since December 2, 2022, he has already lost days of business as well as financial losses due to the Security Incident and expects those expenses to increase.

## **DEFENDANT**

48.     Founded in 1998, Rackspace touts itself as a "multicloud solutions expert" and a leading provider of expertise and managed services across all the major public and private cloud technologies, assisting business customers in over 120 countries.[3] Enjoying revenues exceeding $3 billion for the fiscal year ending December 31, 2021, Rackspace is the world's largest managed cloud

---

[3]    https://www.rackspace.com/about (last accessed December 4, 2022).

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

provider, and provides access to such cloud offerings as Amazon Web Services, Microsoft Azure and OpenStack.

49.    According to Rackspace, the company "deliver[s] *to* a global customer base through an integrated service delivery model. [Rackspace has] a presence in more than 60 cities around the world . . . serve[s] over 100,000 customers across 120 countries as of December 31, 2021, including more than half of the Fortune 100."[4]

50.    Defendant Rackspace Technology, Inc. has a principal place of business in San Antonio, Texas.

51.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiffs. Representative Plaintiffs will seek leave of court to further amend this Complaint to reflect the true names and capacities of such responsible parties when the identities become known.

## CLASS ACTION ALLEGATIONS

52.    Representative Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), on behalf of themselves and the following class/subclasses:

## NATIONWIDE CLASS

"All individuals within the United States of America whose PII and/or proprietary data was rendered unavailable and/or accessed by unauthorized third parties in the Rackspace Technology, Inc. data security/ransomware incident starting on or about December 2, 2022."

53.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek certification of state-by-state claims in the alternative to the nationwide claims brought under Texas common law, as well as statutory claims under state data breach statutes and consumer

---

[4]    https://ir.rackspace.com/node/9031/html (last accessed December 10, 2022) (Rackspace's Securities and Exchange Commission Form 10K (Annual Report) for year ending December 31, 2021), at p. 16.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

protection statutes, on behalf of separate statewide subclasses for each State (the "Statewide Subclasses"), defined as follows:

### STATEWIDE [*NAME OF STATE*] SUBCLASS

"All individuals within the [Name of State] whose PII and/or proprietary data was rendered unavailable and/or accessed by unauthorized third parties in the Rackspace Technology, Inc. data security/ransomware incident starting on or about December 2, 2022."

54.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

55.    Representative Plaintiffs reserve the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

56.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed classes is easily ascertainable.

    a.    Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is in the thousands of entities/individuals. Membership in the classes will be determined by analysis of Defendant's records.

    b.    Commonality: Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

        1)    Whether Defendant had a legal duty to Representative Plaintiffs and the Classes to exercise due care in collecting, storing, using and/or safeguarding their Sensitive Data;

2)  Whether Defendant knew or should have known of the susceptibility of its data security systems to a breach;

3)  Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4)  Whether Defendant's failure to implement adequate data security measures allowed the Security Incident to occur;

5)  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

6)  Whether Defendant adequately, promptly, and accurately informed Representative Plaintiffs and Class Members that their Sensitive Data had been compromised;

7)  How and when Defendant actually learned of the Security Incident;

8)  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of Sensitive Data of Representative Plaintiffs and Class Members;

9)  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Security Incident to occur;

10) Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Sensitive Data of Representative Plaintiffs and Class Members;

11) Whether Representative Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

12) Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.  Typicality: Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. Representative Plaintiffs and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d.  Adequacy of Representation: Representative Plaintiffs in this class action are adequate representatives of each of the Plaintiff Classes in that the Representative Plaintiffs have the same interest in the litigation of this case as the Class Members, are committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the classes in their entirety. Representative Plaintiffs anticipate no management difficulties in this litigation.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

e.    <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

57.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classed in their entirety. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Representative Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Classes in their entirety, not on facts or law applicable only to Representative Plaintiffs.

58.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Sensitive Data of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

59.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## **CHOICE OF LAW FOR NATIONWIDE CLAIMS**

60.    The State of Texas has a significant interest in regulating the conduct of businesses operating within its borders. Texas, which seeks to protect the rights and interests of persons and businesses located in Texas and all residents and citizens of the United States against a company headquartered and doing business in Texas, has a greater interest in the nationwide claims of Representative Plaintiffs and Nationwide Class Members than any other state and is most intimately concerned with the claims and outcome of this litigation.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

61.     The principal place of business of Rackspace Technology, Inc., located at 1 Fanatical Pl., City of Windcrest, San Antonio, TX 78218, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including its data security functions and major policy, financial and legal decisions.

62.     Rackspace's response to the data breach at issue here, and corporate decisions surrounding such response, were made from and in Texas.

63.     Rackspace's breaches of duty to Representative Plaintiffs and Nationwide Class Members emanated from Texas.

64.     Application of Texas law to the Nationwide Class with respect to Representative Plaintiffs' and Class Members' claims is neither arbitrary nor fundamentally unfair because Texas has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Nationwide Class.

65.     Under Texas's choice of law principles, which are applicable to this action, the common law of Texas applies to the nationwide common law claims of all Nationwide Class members.

## COMMON FACTUAL ALLEGATIONS

### The Security Incident/Cyber-Attack

66.     According to Defendant, at some point prior to 2:49 AM EST on or about December 2, 2022, Defendant discovered "an issue [that affected its Hosted Exchange Environments]."

67.     According to Defendant, at roughly 2:49 AM EST, it was investigating the issues, but provided no further information to Representative Plaintiffs and Class Members. As of that time, Defendant had allegedly already received "reports of connectivity issues" to its Exchange environments, admitting (albeit much later and insufficiently) that users "may experience an error upon accessing the Outlook Web App (Webmail) and syncing their email clients."

68.     According to Defendant, over the next several hours, Defendant continued its investigation regarding these connectivity and login issues, further admitting (again, much later) that users "may experience an error upon attempting to access OWA (Webmail) & sync mail to their email

client" or "a prompt [to] re-enter their password."

69.     Over the course of the following day, Defendant's investigation continued, with Defendant acknowledging that these "connectivity and login issues [were] greatly impact its clients."

70.     According to statements made later on its website, Defendant recognized, and then apologized, for the "major disruption" these issues caused its clients.

71.     According to statements made later that evening on December 2, 2022, Defendant again acknowledged that this "significant failure" in its environment was impacting its clients "greatly." At that time, it directed its clients' account administrators to "manually set up each individual user" on clients' accounts–actions which would require significant time and expense to those clients. During that recommended process, Defendant acknowledged that its clients would be "unable to connect to the Hosted Exchange service to sync new email or send mail using [the] Hosted Exchange." Defendant further encouraged "admins to configure and set up their users accounts on Microsoft 365 so they can begin sending and receiving mail immediately."

72.     According to Defendant, as of December 3, 2022, at 1:57 AM EST, Defendant had determined, and later acknowledged, without further meaningful information, that the forgoing events were the result of a "security incident."

73.     While Defendant claims to have discovered the disruption as early as December 2, 2022, Defendant did not inform victims of the Security Incident other than vis-à-vis an incident report/summary posted at some point on its website. Indeed, Representative Plaintiffs and Class Members were wholly unaware of the nature and/or root cause, or risks associated with the Security Incident, if at all, until their email accounts became unusable and/or they contacted Defendant directly to inquire as to the disruption.

74.     As of the filing of this amended Complaint, Defendant has reported on its site, a variety of announcements, including:

02:49 AM EST (12/02/22): Rackspace claims it was "investigating an issue that [was] affecting our Hosted Exchange environments." No further information was given.

03:02 AM EST (12/02/22): Rackspace claims it was "investigating reports of connectivity issues" to its Exchange environments." No further information was given.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

04:39 AM EST (12/02/22): Rackspace claims it was "[continuing] to investigate the connectivity and login issues to [its] Exchange environments." No further information was given.

06:36 AM EST (12/02/22): Rackspace claims it was "[continuing] to investigate the connectivity and login issues to [its] Exchange environments." No further information was given.

09:38 AM EST (12/02/22): Rackspace claims that "all hands [were] on the deck & right resources have been engaged and are actively working on the issue. All new updates [would] be posted [on its site] as they become available."

01:54 PM EST (12/02/22): Rackspace says it was "aware of an issue impacting our Hosted Exchange environments." No further information was given.

04:01 PM EST (12/02/22): Rackspace says it was "aware of an issue impacting our Hosted Exchange environments." No further information was given.

08:19 PM EST (12/02/22): Rackspace acknowledged "significant failure in our Hosted Exchange environment, which was a "major disruption."

01:57 AM EST (12/03/22): Rackspace acknowledged that this was a security incident. No ETA was given for resolution of the impact of the event. Rackspace encouraged its clients' admins to configure and set up their users accounts on Microsoft 365 so they could begin sending and receiving mail immediately. Rackspace noted that, "while the Hosted Exchange environment [was] down, clients [would] be unable to connect to the Hosted Exchange service to sync new mail or send mail using Hosted Exchange."

01:28 AM EST (12/05/22): Rackspace noted that the set up and configuration of accounts on Microsoft 365 would require a manual set up of each individual user on customers' accounts.

10:59 PM EST (12/05/22): Rackspace acknowledges that its call queue hold times for customer service were 2-3 hours.

08:26 AM EST (12/06/22): Rackspace confirmed suspicious activity in its Hosted Exchange environment and that it was the result of a "ransomware" incident. Rackspace asks its customers to migrate their users and domains to Microsoft 365, while acknowledging that this forwarding would not apply retroactively to mail sent before the event (i.e., that this was a "temporary solution" until Microsoft 365 is fully set up).

12:50 PM EST (12/07/22): Rackspace confirmed the event was the result of a "ransomware" attack. No additional details were shared at this time. Rackspace would not reveal if it paid the ransom or where customer data might be. Rackspace continued to encourage customers to migrate email hosting to Microsoft 365.

01:59 PM EST (12/08/22): Rackspace acknowledged and warned clients of scammers and cybercriminals taking advantage.

06:27 PM EST (12/09/22): At least 1/3 of Rackspace clients still had no email. Defendant confirms it was still trying to understand the root cause of the incident and alleges implementation of additional security measures to defend against future cyber threats.

**Defendant Failed Response to the Security/Ransomware Incident**

75.     Upon information and belief, unauthorized persons and/or entities gained access to Representative Plaintiffs' and Class Members' Sensitive Data through the ransomware event with the intent of engaging in misuse of the Sensitive Data, including potential marketing and selling of Representative Plaintiffs' and Class Members' Sensitive Data.

76.     As customers of Defendant, Representative Plaintiffs and Class Members were required to provide their Sensitive Data to Defendant in order to receive email and/or other support services. As part of providing such services, Defendant created, collected, and stored Representative Plaintiffs' and Class Members' Sensitive Data with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

77.     Despite this, Defendant failed to adequately inform Representative Plaintiffs and Class Members of the Security Incident properly, resorting to only subsequently providing opaque announcements as to this incident on its website and/or responding (albeit briefly and insufficiently) to Class Members' concerns if and when they affirmatively contacted Defendant. Further, despite their payments for secure and ongoing access to Representative Plaintiffs' and Class Members' Sensitive Data, Defendant permitted the Sensitive Data to become inaccessible for a prolonged period of time in what it has described as a "security incident" (and, later, a "ransomware" event), further exacerbating Representative Plaintiffs' and Class Members' concerns over the integrity of such information, and/or causing Representative Plaintiffs and Class Members to make significant efforts and incur significant costs to protect that data and/or migrate their data to an altogether different email platform. Defendant has, heretofore, made no real effort, nor has it announced any intention, to reimburse Representative Plaintiffs or Class Members for many of the costs associated with migration of their Sensitive Data to these alternate email platforms.

78.     At present, Representative Plaintiffs and Class Members remain in the dark as to whether their Sensitive Data will ever be fully accessible yet continue to pay Defendant for its services.

79.     Representative Plaintiffs are informed and believe, and thereon allege, that, as of the

date of filing of this amended Complaint, Rackspace has still failed to report to the Attorneys General of any state in the nation this data breach. Indeed, customers must rely on opaque and self-serving reports on Rackspace's own website and/or news media articles to determine the potential duration of the incident, details regarding who may be in possession of their sensitive information, and what steps they should take to take to protect themselves, their businesses and their customers.

80.     What's more, despite the foregoing, Representative Plaintiffs and Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used, and what steps are being taken, if any, to secure their Sensitive Data going forward. Representative Plaintiffs and Class Members are, thus, left to speculate as to where their Sensitive Data ended up, who has used it and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Security Incident and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further incidents.

81.     Representative Plaintiffs' and Class Members' Sensitive Data may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed Sensitive Data for targeted marketing without the approval of Representative Plaintiffs and/or Class Members. Either way, unauthorized individuals can now easily access and have accessed the Sensitive Data of Representative Plaintiffs and Class Members.

**Defendant Collected/Stored Class Members' Sensitive Data**

82.     Defendant acquired, collected, and stored and assured reasonable security over Representative Plaintiffs' and Class Members' Sensitive Data.

83.     As a condition of its relationships with Representative Plaintiffs and Class Members, Defendant required that Representative Plaintiffs and Class Members entrust Defendant with their Sensitive Data. Defendant, in turn, stored that information on Defendant's system that was ultimately affected by the Security Incident.

84.     By obtaining, collecting, and storing Representative Plaintiffs' and Class Members' Sensitive Data, Defendant assumed legal and equitable duties and knew, or should have known, that

it was thereafter responsible for protecting Representative Plaintiffs' and Class Members' Sensitive Data from unauthorized disclosure.

85.     Representative Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Sensitive Data. Representative Plaintiffs and Class Members relied on Defendant to keep their Sensitive Data confidential and securely maintained, and to make only authorized disclosures of this information.

86.     Defendant could have prevented the Security Incident, which began as early as December 2, 2022, by properly securing and encrypting and/or more securely encrypting its servers generally, as well as Representative Plaintiffs' and Class Members' Sensitive Data. Furthermore, defendant could have, and should have, backed up information within its systems such as to permit immediate access thereto by Representative Plaintiffs and Class Members.

87.     Defendant's negligence in safeguarding Representative Plaintiffs' and Class Members' Sensitive Data is exacerbated by repeated warnings and alerts directed to protecting and securing these kinds of Sensitive Data, as evidenced by the trending data breach attacks in recent years.

88.     Due to the high-profile nature of these breaches, and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large, sophisticated corporation with the resources to put adequate data security protocols in place.

89.     And yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiffs' and Class Members' Sensitive Data from being compromised.

**Defendant Had an Obligation to Protect the Sensitive Data**

90.     Defendant's failure to adequately secure Representative Plaintiffs' and Class Members' Sensitive Data arises from statutory and common law.

91.     Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act")

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

(15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

92.    In addition to its obligations under federal and state laws, Defendant owed a duty to Representative Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Sensitive Data in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Representative Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Sensitive Data of Representative Plaintiffs and Class Members.

93.    Defendant owed a duty to Representative Plaintiffs and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the Sensitive Data in its possession was adequately secured and protected.

94.    Defendant further owed a duty to Representative Plaintiffs and Class Members to fulfill its promise of "an industry-leading 100% Uptime Guarantee"[5] and that its "Hosted Exchange [would always] be "patched, up-to-date, and expertly maintained, 24x7x365," as depicted, on the following page:

---

[5]    *See, also*, Rackspace's commitment to "always-on" monitoring, available at https://www.rackspace.com/sites/default/files/white-papers/Rackspace-Data-Sheet-Multicloud-Security-Portfolio-SEC-TSK-5500.pdf

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT



# Rackspace Email Plus with Cloud Drive

## Affordable, enterprise-ready email and file storage, accessible anywhere from any device.

Rackspace® Email Plus is a suite of cloud-hosted products that includes a business-class email solution, secure file storage and sharing, and applications that allow users to create or edit documents and spreadsheets directly from a browser. With affordable pricing and a 100% uptime guarantee, Rackspace Email Plus helps ensure always-on, anywhere access to your email and important files.

### Experts Dedicated to Your Success

With more than 19 years of experience hosting and managing email, Rackspace supports over four million mailboxes. Rackspace Email Plus is designed to help you meet business needs with a comprehensive set of features at an affordable price, all backed by 24x7x365 support and expertise from Rackspace.

### Key Benefits

Email and file access are mission-critical. Trust Rackspace to manage them expertly, securely and affordably.

**Worry-free email:** Rackspace will manage your email so you can focus on running your business. Your email is always accessible from mobile devices and fully compatible with Microsoft® Outlook®.

**A copy in the cloud:** Synchronize files on your desktop with copies in the cloud so you always have access to the most up-to-date versions.

**Edit docs and spreadsheets from anywhere:** Need to make a quick edit but don't have your computer? Edit your documents and spreadsheets right from a browser.

**Share files online:** With Cloud Drive, users can share files with co-workers and collaborate on docs and spreadsheets in real time.

**Peace of mind:** Your email and files are safe with premium anti-spam/ anti-virus and 256-bit encryption used for files in transit and at rest.

**24x7x365 support:** Questions about Rackspace Email Plus? Experienced Rackspace email experts are ready to help via ticket, chat or phone.

### Pricing

**Starts at $3.99 per user per month**
Have more than 200 users? Chat or call 1-866-201-7852

### About Rackspace

Rackspace is your trusted partner across cloud, applications, security, data and infrastructure.

- A leader in the 2019 Gartner Magic Quadrant for Public Cloud Infrastructure Professional and Managed Services, Worldwide
- 3,000+ cloud experts
- Hosting provider for more than half of the Fortune 100
- 20+ years of hosting experience
- Customers in 150+ countries

**Fanatical Experience™**
Experts on your side, doing what it takes to get the job done right. From first consultation to daily operations, Rackspace combines the power of always-on service with best-in-class tools and automation to deliver technology when and how you need it.

**rackspace.**

---

**Key Features**

**25GB mailboxes:** Large mailboxes ensure you have the space needed to store important emails and attachments.

**Secure POP/IMAP connection:** Secure, always-on email is compatible with mobile devices and desktop email clients.

**Premium anti-spam/anti-virus:** Three-layer scanning keeps inboxes safe.

**Active Directory:** Synchronize with Active Directory for easy login and management.

**Outlook auto setup:** Quickly configure with Outlook using just the user name and password.

**Migration services:** Free migration from your current email platform to RSE makes for a quick, worry-free transition.

**100% Uptime Guarantee:** Feel confident knowing that your email and files are always available.

**30GB of secure cloud storage per user:** Online storage is accessible from any device.

**Simple file sharing:** Share files and collaborate in real time with co-workers.

**Desktop & online applications:** Create and edit Word and Excel files from a browser or the desktop app.

**Mobile synchronization:** Keep calendars and contacts up to date on mobile devices.

---

**Take the Next Step**

Let's talk about how Rackspace [Product/Service area] expertise helps you achieve your goals.

Learn more: **www.rackspace.com/email-hosting/webmail**
Call: **1-800-961-2888**

---



Copyright © 2016 Rackspace :: Rackspace®, Fanatical Experience™ and other Rackspace marks are either registered service marks or service marks of Rackspace US, Inc. in the United States and other countries. Features, benefits and pricing presented depend on system configuration and are subject to change without notice. Rackspace disclaims any representations, warranty or other legal or other legal contractual regarding its services except for those expressly stated in a Rackspace services agreement. All other trademarks, service marks, images, products and brands remain the sole property of their respective holders and do not imply endorsement or sponsorship :: April 16, 2016 :: Rackspace Data-Sheet-Email-FNA-CLD-1497

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

95.     Defendant owed a duty to Representative Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect the Sensitive Data in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

96.     Defendant owed a duty to Representative Plaintiffs and Class Members to implement processes that would immediately detect a breach on its data security systems and inform Representative Plaintiffs and Class Members thereof in a timely manner.

97.     Defendant owed a duty to Representative Plaintiffs and Class Members to act upon data security warnings and alerts in a timely fashion.

98.     Defendant owed a duty to Representative Plaintiffs and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Sensitive Data from theft because such an inadequacy would be a material fact in the decision to entrust this Sensitive Data to Defendant.

99.     Defendant owed a duty of care to Representative Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

100.     Defendant owed a duty to Representative Plaintiffs and Class Members to back up, encrypt and/or more reliably encrypt Representative Plaintiffs' and Class Members' Sensitive Data and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Data**

101.     The type of Sensitive Data at issue in this litigation is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on a number of underground internet websites.

102.     The high value of Sensitive Data to criminals is further evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

have a price range of $50 to $200.[6] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[7] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[8]

103.    These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiffs and Class Members. For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiffs and Class Members for the rest of their lives, requiring them to remain constantly vigilant.

104.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

105.    Identity thieves can use PII and financial information, such as that of Representative Plaintiffs and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

106.    The ramifications of Defendant's failure to keep secure Representative Plaintiffs' and

---

[6]    *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 28, 2021).
[7]    *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed November 5, 2021).
[8]    *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed January 21, 2022).

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

Class Members' Sensitive Data are long lasting and severe. Once Sensitive Data is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the Sensitive Data of Representative Plaintiffs and Class Members was undoubtedly taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the Sensitive Data for that purpose. Indeed, the fraudulent activity resulting from the Security Incident may not come to light for years.

107.    There may be a time lag between when harm occurs versus when it is discovered, and also between when the Sensitive Data is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[9]

108.    Such data breaches are preventable.[10] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[11] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[12]

109.    Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs.[13]

---

[9]    *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed January 21, 2022).
[10]    Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[11]    *Id.* at 17.
[12]    *Id.* at 28.
[13]    *Id.*

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

110. Here, Defendant knew of the importance of safeguarding Sensitive Data and of the foreseeable consequences that would occur if Representative Plaintiffs' and Class Members' Sensitive Data was stolen, including the significant costs that would be placed on Representative Plaintiffs and Class Members as a result of a breach of this magnitude. As detailed above, Defendant is a large, sophisticated organization with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Representative Plaintiffs and Class Members. Its failure to do so is, therefore, intentional, willful, reckless and/or grossly negligent.

111. Defendant disregarded the rights of Representative Plaintiffs and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Representative Plaintiffs' and Class Members' Sensitive Data, (iii) failing to take standard and reasonably available steps to prevent the Security Incident, (iv) concealing the existence and extent of the Security Incident for an unreasonable duration of time, (v) failing to back up and/or provide access to backed up information, and (vi) failing to provide Representative Plaintiffs and Class Members prompt and accurate notice of the Security Incident.

**Reactions to the Data Breach**

112. Angered responses from Rackspace customers, as well as press media attention to the Security Incident have been plentiful and serve to further highlight the devastating scope of the foregoing events.

113. Among other media commentary, some investigative journalists noted:

- Rackspace has been frustratingly closemouthed about the details. Company officials won't say whether they intend to pay ransom to unlock their servers. They won't identify the perpetrator or detail the attacker's demands. They won't say how much data is at risk or how many customers are affected. And they won't provide a guess on when the issue will be resolved." -Barrons, 12/10/22

- "A Dec. 2 ransomware attack at Rackspace Technology — which the managed

37

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

cloud hosting company took several days to confirm — is quickly becoming a case study on the havoc that can result from a single well-placed attack on a cloud service provider." -Dark Reading, 12/7/22

- Josh Prewitt, chief product officer at Rackspace, "conceded that some [customers] have lost access to legacy email, calendar, and contact information unless they were backed up locally or with a third-party provider." -Barrons, 12/10/22

- "[C]ybersecurity experts are chiming why Rackspace suffered such an incident, [pointing to] outdated software which should have been updated through a zero-day vulnerabilities patch available in September 2022." -Itechpost, 12-5-22

114.   Users are similarly outraged by the denial of service, the ongoing absence of customer service and lack of transparency that this was indeed a cyber-attack has jeopardized thousands of businesses nationwide, explaining that:

- "The #rackspace failure had my law firm completely shut down for 80+ hours and nearly 2 full business days." -Twitter Posting

- "My personal/business account with over 15 years of email and correspondence was wiped out. …I do not have correspondence, meetings are lost, contacts and tasks are lost. Rackspace was not providing redundancy and back-up as they should." -Internet Testimonial

- "Guys, when are you going to give us access to our data," the user posted. "Telling us to go to M365 with a new blank slate is not acceptable. Help your partners. Give us our data back." -Rackspace user

- "The #rackspace failure had my law firm completely shut down for 80+ hours and nearly 2 full business days." -Twitter Posting

- "Work around does not work. Call backs in the middle of the night, if you get a call back at all. No support. Those that I have actually talked to, know absolutely nothing but reading the "instructions" that don't work. Avoid at all costs. Am looking to export my domain to a reputable company now." YELP! Posting

- "All the emails from Thursday night 12/1/22 until Saturday afternoon were lost. All our google ads were stopped for 1 entire week. Potential lost income of 5 patients totaling $100,000, Additional income to external IT support staff and additional staff expenses totaling $3000." -Internet Testimonial

- "Finally up and running with 365. No emails since Friday and near ten years of emails in the ether. One of the first emails to the 365 inbox -a monthly invoice from #rackspace. You couldn't make it up. #RackspaceDown" -Twitter Posting

115.   Indeed, the fallout from this Security Incident may be felt for years.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

## CLAIMS ON BEHALF OF THE NATIONWIDE CLASS AND ALL SUBCLASSES

### COUNT 1
### NEGLIGENCE

116.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

117.    At all times herein relevant, Defendant owed Representative Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their Sensitive Data and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the Sensitive Data of Representative Plaintiffs and Class Members in its computer systems and on its networks.

118.    Among these duties, Defendant was expected:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Sensitive Data in its possession;

    b.    to protect Representative Plaintiffs' and Class Members' Sensitive Data using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

    c.    to implement processes to quickly detect the Security Incident and to timely act on warnings about data breaches; and

    d.    to promptly notify Representative Plaintiffs and Class Members of any security incident, or intrusion that affected, or may have affected, their Sensitive Data.

119.    Defendant knew that the Sensitive Data was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Representative Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

120.    Defendant knew, or should have known, of the risks inherent in collecting and storing Sensitive Data, the vulnerabilities of its data security systems, and the importance of adequate security. Defendant knew about this vis-à-vis numerous, well-publicized data breaches.

121.    Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Representative Plaintiffs' and Class Members' Sensitive Data.

122.    Only Defendant was in the position to ensure that its systems and protocols were

sufficient to protect the Sensitive Data that Representative Plaintiffs and Class Members had entrusted to it.

123.    Defendant breached its duties to Representative Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Sensitive Data of Representative Plaintiffs and Class Members.

124.    Because Defendant knew that a breach of its systems could damage thousands of individuals/businesses, including Representative Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the Sensitive Data contained therein.

125.    Representative Plaintiff(s)' and Class Members' willingness to entrust Defendant with their Sensitive Data was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems and the Sensitive Data it stored on them from attack. Thus, Defendant had a special relationship with Representative Plaintiffs and Class Members.

126.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiffs' and Class Members' Sensitive Data and promptly notify them about the Security Incident. These "independent duties" are untethered to any contract between Defendant and Representative Plaintiffs and/or the remaining Class Members.

127.    Defendant breached its general duty of care to Representative Plaintiffs and Class Members in, but not necessarily limited to, the following ways:

  a.  by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Sensitive Data of Representative Plaintiffs and Class Members;

  b.  by failing to timely and accurately disclose that Representative Plaintiffs' and Class Members' Sensitive Data had been improperly acquired or accessed;

  c.  by failing to adequately protect and safeguard the Sensitive Data by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Sensitive Data;

  d.  by failing to provide adequate supervision and oversight of the Sensitive Data with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Sensitive Data of Representative Plaintiffs and Class Members, misuse the Sensitive Data

40

and intentionally disclose it to others without consent;

e.  by failing to adequately train its employees to not store Sensitive Data longer than absolutely necessary;

f.  by failing to consistently enforce security policies aimed at protecting Representative Plaintiff(s)' and the Class Members' Sensitive Data;

g.  by failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h.  by failing to encrypt Representative Plaintiffs' and Class Members' Sensitive Data and monitor user behavior and activity in order to identify possible threats.

128.   Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

129.   As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

130.   The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the Sensitive Data to Representative Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their Sensitive Data.

131.   Defendant breached its duty to notify Representative Plaintiffs and Class Members of the unauthorized access by unreasonably waiting after learning of the Security Incident to notify Representative Plaintiffs and Class Members (if and when it notified them at all) and then by failing and continuing to fail to provide Representative Plaintiffs and Class Members sufficient information regarding the breach. To date, Defendant has not provided sufficient information to Representative Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Representative Plaintiffs and Class Members.

132.   By notifying Representative Plaintiffs and Class Members that the disruption of service was a "security incident," and offering little more, Representative Plaintiffs and Class Members reasonably elected from an early juncture in the line of developing events to treat the incident as a data breach, such that they took steps to change passwords, notify clients and/or otherwise taking steps to

41

protect the integrity of their Sensitive Data. These steps required Representative Plaintiffs and Class Members to incur significant costs and time.

133.    And yet, through its failure to provide timely and clear notification (if any notification at all) of the Security Incident to Representative Plaintiffs and Class Members, Defendant prevented many Representative Plaintiffs and Class Members from taking all available meaningful and proactive steps to secure their Sensitive Data.

134.    There is a close causal connection between Defendant's failure to implement security measures to protect the Sensitive Data of Representative Plaintiffs and Class Members and the harm suffered, or risk of imminent harm suffered by Representative Plaintiffs and Class Members. Representative Plaintiffs' and Class Members' Sensitive Data was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Sensitive Data by adopting, implementing, and maintaining appropriate security measures.

135.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

136.    The damages Representative Plaintiffs and Class Members have suffered (as alleged above) and will suffer, were and are the direct and proximate result of Defendant's grossly negligent conduct.

137.    Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII and financial information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

138.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect Sensitive Data and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Data it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiffs and Class Members.

139.    Defendant had a further duty to employ reasonable security measures and otherwise protect the Sensitive Data of Representative Plaintiffs and Class Members pursuant to Texas common and statutory law.

140.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Representative Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Representative Plaintiffs' and Class Members' Sensitive Data within Defendant's possession.

141.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Representative Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Representative Plaintiffs' and Class Members' Sensitive Data.

142.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Representative Plaintiffs and Class Members that the Sensitive Data within Defendant's possession might have been compromised and precisely the type of information compromised.

143.    As a direct and proximate result of Defendant's negligence (and negligence *per se*), Representative Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of the opportunity of how their Sensitive Data is used, (iii) the compromise, publication, and/or theft of their Sensitive Data, (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Sensitive Data, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Security Incident, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft, (vi) the continued risk to their Sensitive Data, which may remain in Defendant's possession and is subject to further unauthorized disclosures, so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiffs' and Class Members' Sensitive Data in its continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Data compromised as a result of the Security Incident for the remainder of the lives

and/or business operations of Representative Plaintiffs and Class Members.

144.    As a direct and proximate result of Defendant's negligence (and negligence *per se*), Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

145.    Additionally, as a direct and proximate result of Defendant's negligence (and negligence *per se*), Representative Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their Sensitive Data, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Data in its continued possession.

## COUNT 2
## BREACH OF IMPLIED CONTRACT

146.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

147.    Through its course of conduct, Defendant, Representative Plaintiffs and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy and value of Representative Plaintiffs' and Class Members' Sensitive Data.

148.    Defendant required Representative Plaintiffs and Class Members to provide and entrust their Sensitive Data as a condition of obtaining Defendant's services.

149.    Defendant solicited and invited Representative Plaintiffs and Class Members to provide their Sensitive Data as part of Defendant's regular business practices. Representative Plaintiffs and Class Members accepted Defendant's offers and provided their Sensitive Data to Defendant.

150.    As a condition of being direct customers of Defendant, Representative Plaintiffs and Class Members provided and entrusted their Sensitive Data to Defendant. In so doing, Representative Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and

44

confidential, and to timely and accurately notify Representative Plaintiffs and Class Members if their data and/or that of their clients had been breached and compromised or stolen.

151.    Defendant's service information page is an agreement between Defendant's and individuals and businesses who/that provided their Sensitive Data (including PII and other Personal Information) to Defendant, including Representative Plaintiffs and Class Members. (See, *supra*, Figure 1)

152.    In its Form 10K (see, *infra*, fn. 3), Defendant emphasized its "aim to be [its] customers' most trusted advisor . . . ," a sentiment repeated on its website, along with several commitments to make available to customers Defendant's Hosting environments "24x7x365," and provide customer support and troubleshooting services "24x7x365."[14]

153.    A meeting of the minds occurred when Representative Plaintiffs and Class Members agreed to, and did, provide their Sensitive Data to Defendant, in exchange for, amongst other things, the protection of their Sensitive Data.

154.    Representative Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

155.    Defendant breached its agreement with Plaintiffs and Class members by failing to protect their Sensitive Data. Specifically, it (1) failed to take reasonable steps to use safe and secure systems to protect that information, (2) failed to have appropriate security protocols and measures in place to protect that information, such as adequate internal and external firewalls, physical security, technological security measures, and encryption, (3) disclosed that information to unauthorized third parties, (4) failed to back up and make readily available those backups, and (5) failed to promptly alert or give notice of the breach to Representative Plaintiffs and Class Members.

156.    As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiffs and Class Members have suffered (and will continue to suffer), *inter*

---

[14]    *See, also*, https://www.rackspace.com/sites/default/files/white-papers/Rackspace-Data-Sheet-Email-Plus-CLO-14117.pdf; https://www.rackspace.com/sites/default/files/white-papers/rackspace_data_sheet_-_managed_hosting_intensive_service_level_-_032018_10017_1.pdf; https://www.rackspace.com/applications/microsoft-exchange (last accessed December 12, 2022)

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

*alia*, (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (c) loss of the confidentiality of the stolen confidential data, (d) the illegal sale of the compromised data on the dark web, (e) lost work time and (f) other economic and non-economic harm.

**COUNT 3**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

157.   Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

158.   Every contract in the State of Texas and in the states where Representative Plaintiffs reside and/or operate businesses has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

159.   Representative Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant.

160.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard the Sensitive Data, failing to timely and accurately disclose the Security Incident to Representative Plaintiffs and Class Members and continued acceptance of Sensitive Data and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Security Incident.

161.   Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT 4**
**UNJUST ENRICHMENT**

162.     Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

163.     Representative Plaintiffs and Class Members have an interest, both equitable and legal, in the Sensitive Data about them that was conferred upon, collected by, and maintained by Defendant and that was ultimately held/accessed by cybercriminals in the Security Incident. This Sensitive Data was conferred on Defendant in most cases by third parties but, in some instances, directly by Representative Plaintiffs and Class Members themselves.

164.     Defendant was benefitted by the conferral upon it of the Sensitive Data pertaining to Representative Plaintiffs and Class Members and by its ability to retain and use that information. Defendant understood that it was, in fact, so benefitted.

165.     Defendant also understood and appreciated that the Sensitive Data pertaining to Representative Plaintiffs and Class Members was valuable, private and/or confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that Sensitive Data.

166.     But for Defendant's willingness and commitment to maintain its privacy and confidentiality, that Sensitive Data would not have been transferred to and entrusted with Defendant. Further, if Defendant had disclosed that its data security measures were inadequate, Defendant would not have been permitted to continue in operation by regulators, its shareholders, and participants in the marketplace.

167.     As a result of Defendant's wrongful conduct as alleged in this amended Complaint (including, among things its utter failure to employ adequate data security measures, its continued maintenance and use of the Sensitive Data belonging to Representative Plaintiffs and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that Personal Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Representative Plaintiffs and Class Members. Among other things, Defendant continues to benefit

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

and profit from the use/maintenance of the Sensitive Data while its value to Representative Plaintiffs and Class Members has been diminished.

168.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Representative Plaintiffs' and Class Members' Sensitive Data, while, at the same time, failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

169.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Representative Plaintiffs and Class Members in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

170.    The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

171.    Defendant is, therefore, liable to Representative Plaintiffs and Class Members for restitution in the amount of the benefit conferred on Defendant as a result of its wrongful  conduct, including specifically the value to Defendant of the Sensitive Data that was accessed/stolen in the Defendant data breach and the profits Defendant is receiving from the use and/or maintenance of that information.

## COUNT 5
## DECLARATORY JUDGMENT

172.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

173.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

174.    An actual controversy has arisen in the wake of the data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' Sensitive Data (including Personal Information) and with regard to whether Defendant is currently maintaining data security measures adequate to protect Representative Plaintiffs and Class Members from further data breaches that compromise their Sensitive Data. Representative Plaintiffs allege that Defendant's data security measures remain inadequate. Defendant surely denies these allegations. Furthermore, Representative Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their Sensitive Data and remain at imminent risk that further compromises of their Sensitive Data will occur in the future.

175.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.    Defendant continues to owe a legal duty to secure consumers' Sensitive Data (including Personal Information) and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

   b.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Sensitive Data.

176.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' Sensitive Data.

177.    If an injunction is not issued, Representative Plaintiffs and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach affecting Defendant. The risk of another such breach is real, immediate, and substantial. If another breach affecting Defendant occurs, Representative Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and/or quantifiable and they will be forced to bring multiple lawsuits to rectify the same conduct.

178.    The hardship to Representative Plaintiffs and Class Members, if an injunction does not issue, exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs affecting Defendant, Representative Plaintiffs and Class Members will

likely be subjected to substantial identify theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

179.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach affecting Defendant, thus eliminating the additional injuries that would result to Representative Plaintiffs and the thousands of consumers whose confidential and valuable information would be further compromised.

## <u>CLAIMS ON BEHALF OF THE STATE SUBCLASSES</u>

### <u>COUNT 6</u>
### ALASKA PERSONAL INFORMATION PROTECTION ACT
### Alaska Stat. §§ 45.48.010, *et seq.*

180.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

181.    The Alaska Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Alaska Subclass, bring this claim.

182.    Defendant is a business that owns or licenses Sensitive Data (e.g., Personal Information) as defined by Alaska Stat. § 45.48.090(7). As such a business, it is a Covered Person as defined in Alaska Stat. § 45.48.010(a).

183.    Plaintiff(s) and Alaska Subclass members' Sensitive Data (*e.g.*, Social Security numbers) includes Personal Information as covered under Alaska Stat. § 45.48.010(a).

184.    Defendant is required to accurately notify Plaintiff(s) and Alaska Subclass members if it becomes aware of a breach of its data security system in the most expeditious time possible and without unreasonable delay under Alaska Stat. § 45.48.010(b).

185.    Defendant is similarly required to determine the scope of the breach and restore the

reasonable integrity of the information system under Alaska Stat. § 45.48.010(b).

186.    Because Defendant was aware of a breach of its security system, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Alaska Stat. § 45.48.010(b).

187.    By failing to disclose the Security Incident in a timely and accurate manner Defendant violated Alaska Stat. § 45.48.010(b).

188.    Pursuant to Alaska Stat. § 45.48.080(b), a violation of Alaska Stat. § 45.48.010(b) is an unfair or deceptive act or practice under the Alaska Consumer Protection Act.

189.    As a direct and proximate result of Defendant's violations of Alaska Stat. § 45.48.010(b), Plaintiff(s) and Alaska Subclass members suffered damages, as described above.

190.    Plaintiff(s) and Alaska Subclass members seek relief measured as the greater of (a) each unlawful act, (b) three times actual damages in an amount to be determined at trial, or (c) statutory damages in the amount of $500 for Plaintiff(s) and each Alaska Subclass Member, reasonable attorneys' fees, and any other just and proper relief available under Alaska Stat. § 45.48.080(b)(2) and Alaska Stat. § 45.50.531.

## COUNT 7
## ALASKA CONSUMER PROTECTION ACT
### Alaska Stat. §§ 45.50.471, *et seq.*

191.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

192.    The Alaska Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Alaska Subclass, bring this claim.

193.    Defendant advertised, offered, or sold goods or services in Alaska and engaged in trade or commerce directly or indirectly affecting the people of Alaska.

194.    Alaska Subclass members are "consumers" as defined by Alaska Stat. § 45.50.561(4).

195.    Defendant engaged in unfair or deceptive acts and practices in the conduct of trade or commerce, in violation Alaska Stat. § 45.50.471, including:

a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

b.    Representing that goods or services are of a particular standard, quality, or grade, when they are of another;

c.    Advertising goods or services with intent not to sell them as advertised;

d.    Engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives, or damages a buyer in connection with the sale or advertisements of its goods or services; and

e.    Using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of its goods or services whether or not a person was in fact misled, deceived, or damaged.

196.    Defendant's unfair and deceptive acts and practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Alaska Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Alaska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Alaska Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Alaska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Alaska Subclass members' Sensitive Data; and

g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Alaska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

197.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

198.    Defendant intended to mislead Plaintiff(s) and Alaska Subclass members and induce them to rely on its misrepresentations and omissions.

199.    Defendant acted intentionally, knowingly, and maliciously to violate Alaska's Consumer Protection Act, and recklessly disregarded Plaintiff(s) and Alaska Subclass members' rights.

200.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff(s) and Alaska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

201.    Plaintiff(s) and the Alaska Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (a) three times their actual damages or (b) statutory damages in the amount of $500, punitive damages, reasonable attorneys' fees and costs, injunctive relief, and any other relief that is necessary and proper.

## COUNT 8
## ARIZONA CONSUMER FRAUD ACT
### A.R.S. §§ 44-1521, *et seq.*

202.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

203.    The Arizona Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Arizona Subclass, bring this claim.

204.    The Arizona Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Arizona Subclass, bring this claim.

205.    Defendant is a "person" as defined by A.R.S. § 44-1521(6).

206.    Defendant advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

207.    Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A), including:

     a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Arizona Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

     b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

     c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Arizona Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

     d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Arizona Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

     e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Arizona Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

     f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Arizona Subclass members' Sensitive Data; and

     g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Arizona Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

208.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

209.    Defendant intended to mislead Plaintiff(s) and Arizona Subclass members and induce them to rely on its misrepresentations and omissions.

210.    Had Defendant disclosed to Plaintiff(s) and Arizona Subclass members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Arizona Subclass. Defendant accepted the responsibility of hosting and keeping Sensitive Data secure while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Arizona Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

211.    Defendant acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiff(s) and Arizona Subclass members' rights. Defendant's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

212.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff(s) and Arizona Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Data.

213.    Plaintiff(s) and Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

**COUNT 9**
**CALIFORNIA CUSTOMER RECORDS ACT**
**Cal. Civ. Code §§ 1798.80,** *et seq.*

214.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

215.    The California Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the California Subclass, bring this claim.

216.    "[T]o ensure that Sensitive Data (including Personal Information) about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

217.    Defendant is a business that owns, maintains, and licenses Personal Information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiff(s) and California Subclass members.

218.    Businesses that own or license computerized data that includes Personal Information, including Social Security numbers, are required to notify California residents when their Personal Information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

219.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Cal. Civ. Code § 1798.82.

220.    Plaintiff(s) and California Subclass members' Sensitive Data (*e.g.*, Social Security numbers) includes Personal Information as covered by Cal. Civ. Code § 1798.82.

221.    Because Defendant reasonably believed that Plaintiff(s)' and California Subclass

members' Sensitive Data (including Personal Information) was acquired by unauthorized persons during the Security Incident, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

222.    By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated Cal. Civ. Code § 1798.82.

223.    As a direct and proximate result of Defendant's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff(s) and California Subclass members  suffered damages, as described above.

224.    Plaintiff(s) and California Subclass members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

**COUNT 10**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

225.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

226.    The California Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the California Subclass, bring this claim.

227.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code §17201.

228.    Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")  by engaging in unlawful, unfair, and deceptive business acts and practices.

229.    Defendant's "unfair" acts and practices include:

    a.    Defendant failed to implement and maintain reasonable security measures to protect Plaintiff(s) and California Subclass members' Sensitive Data (from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Security Incident. Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents. This  conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff(s) and the California Subclass, whose Sensitive Data has been compromised.

    b.    Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect

57
CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45), and California's Consumer Records Act (Cal. Civ. Code § 1798.81.5).

c.    Defendant's failure to implement and maintain reasonable security measures also lead to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused.

d.    Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

230.    Defendant has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq.*, the FTC Act, 15 U.S.C. § 45, and California common law.

231.    Defendant's unlawful, unfair, and deceptive acts and practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and California Subclass members' Sensitive Data , which was a direct and proximate cause of the Security Incident;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and California Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, which was a direct and proximate cause of the Security Incident;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and California Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and California Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*;

f.    Omitting, suppressing, and concealing the material fact that it did not

reasonably or adequately secure Plaintiff(s) and California Subclass members' Sensitive Data; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and California Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*

232.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

233.  As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff(s) and California Subclass members were injured and lost money or property, including the price received by Defendant for its goods and services, monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

234.  Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff(s)' and California Subclass members' rights.

235.  Plaintiff(s) and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their Sensitive Data, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

**COUNT 11**
**COLORADO SECURITY BREACH NOTIFICATION ACT**
**Colo. Rev. Stat. §§ 6-1-716, *et seq.***

236.  Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

59

237.     The Colorado Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Colorado Subclass, bring this claim.

238.     Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Colo. Rev. Stat. §§ 6-1-716(1) and 6-1-716(2).

239.     Plaintiff(s) and Colorado Subclass members' Sensitive Data (*e.g.*, Social Security numbers) includes Personal Information as covered by Colo. Rev. Stat. §§ 6-1-716(1) and 6-1-716(2).

240.     Defendant is required to accurately notify Plaintiff(s) and Colorado Subclass members if it becomes aware of a breach of its data security system in the most expedient time possible and without unreasonable delay under Colo. Rev. Stat. § 6-1-716(2).

241.     Because Defendant was aware of a breach of its security system, it had an obligation to disclose the Security Incident in a timely and accurate fashion as mandated by Colo. Rev. Stat. § 6-1-716(2).

242.     By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated Colo. Rev. Stat. § 6-1-716(2).

243.     As a direct and proximate result of Defendant's violations of Colo. Rev. Stat. § 6-1-716(2), Plaintiff(s) and Colorado Subclass members suffered damages, as described above.

244.     Plaintiff(s) and Colorado Subclass members seek relief under Colo. Rev. Stat. § 6-1-716(4), including actual damages and equitable relief.

## COUNT 12
## COLORADO CONSUMER PROTECTION ACT
### Colo. Rev. Stat. §§ 6-1-101, *et seq.*

245.     Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

246.     The Colorado Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Colorado Subclass, bring this claim.

247.     Defendant is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

248.     Defendant engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

249.    Plaintiff(s) and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Defendant or successors in interest to actual consumers.

250.    Defendant engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1), including:

   a.    Knowingly making a false representation as to the characteristics of products and services;

   b.    Representing that services are of a particular standard, quality, or grade, though Defendant knew or should have known that there were or another;

   c.    Advertising services with intent not to sell them as advertised; and

   d.    Failing to disclose material information concerning its services which was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

251.    Defendant's deceptive trade practices include:

   a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Colorado Subclass members' Sensitive Data, which was a direct and proximate cause of the Security Incident;

   b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

   c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Colorado Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

   d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Colorado Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

   e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Colorado Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

   f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Colorado Subclass members' Sensitive Data; and

   g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy

61

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

of Plaintiff(s) and Colorado Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

252.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

253.    Defendant intended to mislead Plaintiff(s) and Colorado Subclass members and induce them to rely on its misrepresentations and omissions.

254.    Had Defendant disclosed to Plaintiff(s) and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Florida Subclass. Defendant accepted the responsibility while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Florida Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

255.    Defendant acted intentionally, knowingly, and maliciously to violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiff(s) and Colorado Subclass members' rights.

256.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff(s) and Colorado Subclass members suffered injuries to their legally protected interests, including their legally protected interest in the confidentiality and privacy of their personal information.

257.    Defendant's deceptive trade practices significantly impact the public, because nearly all members of the public are actual or potential consumers of Defendant's services and the Security Incident affected thousands of individuals and businesses in the State of Colorado.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

258.     Plaintiff(s) and Colorado Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendant's bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 13
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## Fla. Stat. §§ 501.201, *et seq.*

259.     Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

260.     The Florida Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Florida Subclass, bring this claim.

261.     Plaintiff(s) and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

262.     Defendant advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

263.     Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

a.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Florida Subclass members' Sensitive Data (including PII and other Personal Information), which was a direct and proximate cause of the Security Incident;

b.     Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.     Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Florida Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Florida's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the Security Incident;

d.     Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Florida Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Florida Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Florida's data security statute, F.S.A. § 501.171(2);

f.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Florida Subclass members' Sensitive Data; and

g.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Florida Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Florida's data security statute, F.S.A. § 501.171(2).

264.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data (including Personal Information).

265.    Had Defendant disclosed to Plaintiff(s) and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Florida Subclass. Defendant accepted the responsibility while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Florida Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

266.    As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and practices, Plaintiff(s) and Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their

Sensitive Data.

267.    Plaintiff(s) and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21, declaratory and injunctive relief, reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1), and any other relief that is just and proper.

**COUNT 14**
**GEORGIA SECURITY BREACH NOTIFICATION ACT**
**O.C.G.A. §§ 10-1-912,** *et seq.*

268.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

269.    The Georgia Plaintiff(s), individually, individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Georgia Subclass, bring this claim.

270.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by O.C.G.A. § 10-1-912(a).

271.    The types of information accessed in connection with the Security Incident included, but was necessarily limited to, Plaintiff(s) and Georgia Subclass members' Personal  Information  as covered   under O.C.G.A. § 10-1-912(a).

272.    Defendant is required to accurately notify Plaintiff(s) and Georgia Subclass members if it becomes aware of a breach of its data security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiff(s)' and Georgia Subclass members' Sensitive Data, in the most expedient time possible and without unreasonable delay under O.C.G.A. § 10-1-912(a).

273.    Because Defendant was aware of a breach of its security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiff(s)' and Georgia Subclass members' Sensitive Data (including Personal Information), Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by O.C.G.A. § 10-1-912(a).

274.    By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated O.C.G.A. § 10-1-912(a).

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

275.    As a direct and proximate result of Defendant's violations of O.C.G.A. § 10-1-912(a), Plaintiff(s) and Georgia Subclass members suffered damages, as described above.

276.    Plaintiff(s) and Georgia Subclass members seek relief under O.C.G.A. § 10-1-912 including actual damages and injunctive relief.

## COUNT 15
## GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### O.C.G.A. §§ 10-1-370, *et seq.*

277.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

278.    The Georgia Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Georgia Subclass, bring this claim.

279.    Defendant, Plaintiff(s), and Georgia Subclass members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

280.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of O.C.G.A. § 10-1-372(a), including:

a.    Representing that goods or services have characteristics that they do not have;

b.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c.    Advertising goods or services with intent not to sell them as advertised; and

d.    Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

281.    Defendant's deceptive trade practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Georgia Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Georgia Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Georgia Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Georgia Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Georgia Subclass members' Sensitive Data; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Georgia Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

282.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

283.  Defendant intended to mislead Plaintiff(s) and Georgia Subclass members and induce them to rely on its misrepresentations and omissions.

284.  In the course of its business, Defendant engaged in activities with a tendency or capacity to deceive.

285.  Defendant acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff(s) and Georgia Subclass members' rights.

286.  Had Defendant disclosed to Plaintiff(s) and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put

adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Georgia Subclass. Defendant accepted the responsibility of hosting and keeping Sensitive Data secure while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Georgia Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

287.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff(s) and Georgia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

288.    Plaintiff(s) and Georgia Subclass members seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under O.C.G.A. § 10-1-373.

**COUNT 16**
**ILLINOIS PERSONAL INFORMATION PROTECTION ACT**
**815 Ill. Comp. Stat. §§ 530/10(a), *et seq*.**

289.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

290.    The Illinois Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Illinois Subclass, bring this claim.

291.    As a publicly held corporation which handles, collects, disseminates, and otherwise deals with nonpublic personal information, Defendant is a Data Collector as defined in 815 Ill. Comp. Stat. § 530/5.

292.    Plaintiff(s) and Illinois Subclass members' Sensitive Data (*e.g.*, Social Security numbers) includes Personal Information as covered under 815 Ill. Comp. Stat. § 530/5.

293.     As a Data Collector, Defendant is required to notify Plaintiff(s) and Illinois Subclass members of a breach of its data security system in the most expedient time possible and without unreasonable delay consistent with any measures necessary to determine the scope of the breach and to restore the reasonable integrity, security and confidentiality of the data system pursuant to 815 Ill. Comp. Stat. § 530/10(a).

294.     As a Data Collector, Defendant is required to include in the notice to any individual whose Personal Information as defined by 815 Ill. Comp. Stat § 530/5(1) was divulged: the toll free numbers and addresses for consumer reporting agencies, the toll free number, address, and website for the Federal Trade Commission and a statement that the individual can obtain information from these sources about fraud alerts and security freezes. 815 Ill. Comp. Stat. § 530/10(a).

295.     As a Data Collector, Defendant is required, for any individual whose Personal Information as defined by 815 Ill. Comp. Stat § 530/5(2) was divulged, to issue a notice directing said Illinois resident to promptly change his/her user name or password, security question or to take other applicable steps to protect his/her online accounts. 815 Ill. Comp. Stat. § 530/10(a).

296.     By failing to disclose the Security Incident in the most expedient time possible and without unreasonable delay, Defendant violated 815 Ill. Comp. Stat. § 530/10(a).

297.     Pursuant to 815 Ill. Comp. Stat. § 530/20, a violation of 815 Ill. Comp. Stat. § 530/10(a) constitutes an unlawful practice.

298.     As a direct and proximate result of Defendant's violations of 815 Ill. Comp. Stat. § 530/10(a), Plaintiff(s) and Illinois Subclass members suffered damages, as described above.

299.     Plaintiff(s) and Illinois Subclass members seek relief under 815 Ill. Comp. Stat. § 510/3 for the harm they suffered because of Defendant's willful violations of 815 Ill. Comp. Stat. § 530/10(a), including actual damages, equitable relief, costs, and attorneys' fees.

**COUNT 17**
**ILLINOIS CONSUMER FRAUD ACT**
**815 Ill. Comp. Stat. §§ 505,** *et seq.*

300.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

301.    The Illinois Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Illinois Subclass, bring this claim.

302.    Defendant is a "person" as defined by 815 Ill. Comp. Stat. §§ 505/1(c).

303.    Plaintiff(s) and Illinois Subclass members are "consumers" as defined by 815 Ill. Comp. Stat. §§ 505/1(e).

304.    Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

305.    Defendant's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, include:

     a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Illinois Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

     b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

     c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, the Illinois Insurance Information and Privacy Protection Act, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a), which was a direct and proximate cause of the Security Incident;

     d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Illinois Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

     e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Illinois Subclass members' Personal Information, including duties imposed by the FTC Act, 15

70

U.S.C. § 45, *et seq.*, the Illinois Insurance Information and Privacy Protection Act, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a);

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Illinois Subclass members' Sensitive Data; and

g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Illinois Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a).

306.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

307.    Defendant intended to mislead Plaintiff(s) and Illinois Subclass members and induce them to rely on its misrepresentations and omissions.

308.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid, this substantial injury outweighed any benefits to consumers or to competition.

309.    Defendant acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff(s) and Illinois Subclass members' rights.

310.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive acts and practices, Plaintiff(s) and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Data.

311.    Plaintiff(s) and Illinois Subclass members seek all monetary and non-monetary relief

allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 18
### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### 815 Ill. Comp. Stat. §§ 510/2, *et seq.*

312.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

313.    Illinois Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Illinois Subclass, bring this claim.

314.    Defendant is a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

315.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including:

    a.    Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    b.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

    c.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    d.    Advertising goods or services with intent not to sell them as advertised; and

    e.    Engaging in any other conduct that creates a likelihood of confusion or misunderstanding.

316.    Defendant's deceptive trade practices include:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Illinois Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

    b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

    c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Illinois Subclass members' Sensitive

Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, the Illinois Insurance Information and Privacy Protection Act, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a), which was a direct and proximate cause of the Security Incident;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Illinois Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Illinois Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, the Illinois Insurance Information and Privacy Protection Act, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a);

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Illinois Subclass members' Sensitive Data; and

g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Illinois Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, the Illinois Insurance Information and Privacy Protection Act, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a).

317.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

318.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff(s) and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

319.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff(s) and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent

activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

320.    Plaintiff(s) and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

**COUNT 19**
**IOWA PERSONAL INFORMATION SECURITY BREACH PROTECTION LAW**
**Iowa Code § 715C.2**

321.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

322.    The Iowa Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Iowa Subclass, bring this claim.

323.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Iowa Code § 715C.2(1).

324.    Plaintiff(s)' and Iowa Subclass members' Sensitive Data (*e.g.*, Social Security numbers) includes Personal Information as covered under Iowa Code § 715C.2(1).

325.    Defendant is required to accurately notify Plaintiff(s) and Iowa Subclass members if it becomes aware of a breach of its data security system in the most expeditious time possible and without unreasonable delay under Iowa Code § 715C.2(1).

326.    Defendant is also required to affect dissemination of the notice in such a way such that Defendant has taken "any measures necessary to determine the contact information for the affected consumers, determine the scope of the breach, and restore the reasonable integrity, security, and confidentiality of the data," per Iowa Code § 715C.2(1).

327.    Because Defendant was aware of a breach of its security system, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Iowa Code § 715C.2(1). Defendant also had a duty to make the notification in such a manner as to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data. Iowa Code § 715C.2(1).

328.    By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated Iowa Code § 715C.2(1). Furthermore, by failing to determine the scope of the breach and to restore the reasonable integrity, security, and confidentiality of the data, Defendant further violated Iowa Code § 715C.2(1).

329.    Pursuant to Iowa Code § 715C.2(9), a violation of Iowa Code § 715C.2(1) is an unlawful practice pursuant to Iowa Code Ann. § 714.16(7).

330.    As a direct and proximate result of Defendant's violations of Iowa Code § 715C.2(1), Plaintiff(s) and Iowa Subclass members suffered damages, as described above.

331.    Plaintiff(s) and Iowa Subclass members seek relief under Iowa Code § 714.16(7), including actual damages and injunctive relief.

## COUNT 20
## MASSACHUSETTS RIGHT TO PRIVACY
### Mass. Gen. Laws Ann. Ch. 214, §§ 1(B), *et seq*.

332.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

333.    The Massachusetts Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Massachusetts Subclass, bring this claim.

334.    Plaintiffs are residents of the Commonwealth of Massachusetts.

335.    Defendant operated in Massachusetts and held the Sensitive Data of Plaintiff(s) and Massachusetts Subclass members in their facilities.

336.    Defendant caused the unreasonable, substantial, and/or serious interference with the Plaintiff's by allowing the access by unknown parties to Plaintiffs' Sensitive Data without the consent of Plaintiff(s) and Massachusetts Subclass members.

337.    Defendant's unconscionable conduct allowed multiple, severe intrusions upon the privacy of Plaintiff(s) and Massachusetts Subclass members in such a way as would be considered highly offensive to a reasonable person.

338.    Plaintiff(s) and Massachusetts Subclass members seek all monetary and non-monetary

relief allowed by law, including actual damages, injunctive or other equitable relief, and attorneys' fees and costs to remedy the unreasonable, substantial and serious invasions of their privacy through the release of their Sensitive Data.

**COUNT 21**
**MISSOURI MERCHANDISE PRACTICES ACT**
**Mo. Rev. Stat. §§ 407.010, *et seq.***

339.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

340.    The Missouri Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Missouri Subclass, bring this claim.

341.    Defendant is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

342.    Defendant advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

343.    Plaintiff(s) and Missouri Subclass members purchased or leased goods  or services primarily for personal, family, or business purposes.

344.    Defendant engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), including:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Missouri Subclass members' Sensitive Data, which was a direct and proximate cause of the Security Incident;

    b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

    c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Missouri Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

    d.    Misrepresenting that it would protect the privacy and confidentiality of

76

Plaintiff(s) and Missouri Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Missouri Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Missouri Subclass members' Sensitive Data; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Missouri Subclass members' Sensitive Data, including duties imposed by 15 U.S.C. § 45, *et seq.*

345.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

346.   Defendant intended to mislead Plaintiff(s) and Missouri Subclass members and induce them to rely on its misrepresentations and omissions.

347.   Defendant acted intentionally, knowingly, and maliciously to violate Missouri's Merchandise Practices Act, and recklessly disregarded Plaintiff(s) and Missouri Subclass members' rights.

348.   As a direct and proximate result of Defendant's unlawful, unfair, and deceptive acts and practices, Plaintiff(s) and Missouri Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

349.   Plaintiff(s) and Missouri Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

## COUNT 22
## NEBRASKA CONSUMER PROTECTION ACT
### Neb. Rev. Stat. §§ 59-1601, *et seq.*

350.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

351.    The Nebraska Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Nebraska Subclass, bring this claim.

352.    Defendant and Nebraska Subclass members are each a "person" as defined by Neb. Rev. Stat. § 59-1601(1).

353.    Defendant advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska, as defined by Neb. Rev. Stat. § 59-1601.

354.    Defendant engaged in unfair and deceptive acts and practices in conducting trade and commerce, in violation of Neb. Rev. Stat. § 59-1602, including:

   a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Nebraska Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

   b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

   c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Security Incident;

   d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

   e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45;

   f.    Omitting, suppressing, and concealing the material fact that it did not

78

reasonably or adequately secure Plaintiff(s) and Nebraska Subclass members' Personal Information; and

g.     Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45.

355.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

356.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff(s) and Nebraska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Data.

357.    Defendant's unfair and deceptive acts and practices complained of herein affected the public interest, including the large number of Nebraskans affected by the Security Incident.

358.    Plaintiff(s) and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, the greater of either (1) actual damages or (2) $1,000, civil penalties, and reasonable attorneys' fees and costs.

## COUNT 23
## NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### Neb. Rev. Stat. §§ 87-301, *et seq*.

359.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

360.    The Nebraska Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Nebraska Subclass, bring this claim.

361.    Defendant and Nebraska Subclass members are "persons" as defined by Neb. Rev. Stat. § 87-301(19).

362. Defendant advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

363. Defendant engaged in deceptive trade practices in the course of its business, in violation of Neb. Rev. Stat. §§ 87-302(a)(5), (8), and (10), including:

    a.    Represented that goods and services have characteristics, uses, benefits, or qualities that they do not have;

    b.    Represented that goods and services are of a particular standard, quality, or grade if they are of another; and

    c.    Advertised its goods and services with intent not to sell them as advertised and in a manner calculated or tending to mislead or deceive.

364. Defendant's deceptive trade practices include:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Nebraska Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

    b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

    c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Security Incident;

    d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

    e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Nebraska Subclass members' Sensitive Data; and

    g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Nebraska Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

365. Defendant's representations and omissions were material because they were likely to

deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

366.    Defendant intended to mislead Plaintiff(s) and Nebraska Subclass members and induce them to rely on its misrepresentations and omissions.

367.    Had Defendant disclosed to Plaintiff(s) and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Nebraska Subclass. Defendant accepted the responsibility of hosting and keeping Sensitive Data secure while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Nebraska Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

368.    Defendant acted intentionally, knowingly, and maliciously to violate Nebraska's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff(s) and Nebraska Subclass members' rights.

369.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff(s) and Nebraska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

370.    Defendant's deceptive trade practices complained of herein affected consumers at large, including the large number of Nebraskans affected by the Security Incident.

371.    Plaintiff(s) and Nebraska Subclass members seek all monetary and non-monetary relief

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

allowed by law, including injunctive relief, other equitable relief, civil penalties, and attorneys' fees and costs.

**COUNT 24**
**NEW JERSEY CONSUMER FRAUD ACT**
**N.J. Stat. Ann. §§ 56:8-1, *et seq.***

372.   Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

373.   The New Jersey Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the New Jersey Subclass, bring this claim.

374.   Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

375.   Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

376.   The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

377.   Defendant's unconscionable and deceptive practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and New Jersey Subclass members' Sensitive Data, which was a direct and proximate cause of the Security Incident;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and New Jersey Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and New Jersey Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties

pertaining to the security and privacy of Plaintiff(s) and New Jersey Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Subclass members' Sensitive Data; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and New Jersey Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45.

378.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

379.   Defendant intended to mislead Plaintiff(s) and New Jersey Subclass members and induce them to rely on its misrepresentations and omissions.

380.   Defendant acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded Plaintiff(s) and New Jersey Subclass members' rights.

381.   As a direct and proximate result of Defendant's unconscionable and deceptive practices, Plaintiff(s) and New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Data.

382.   Plaintiff(s) and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

## COUNT 25
## NEW JERSEY CUSTOMER SECURITY BREACH DISCLOSURE ACT
### N.J. Stat. Ann. §§ 56:8-163, *et seq.*

383.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

384.    The New Jersey Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the New Jersey Subclass, bring this claim.

385.    Defendant is a business that compiles or maintains computerized records that include Sensitive Data (including Personal Information) on behalf of another business under N.J. Stat. Ann. § 56:8-163(b).

386.    Plaintiff(s)' and New Jersey Subclass members' Sensitive Data (including names, addresses, and Social Security numbers) includes Personal Information covered under N.J. Stat. Ann. §§ 56:8-163, *et seq.*

387.    Under N.J. Stat. Ann. § 56:8-163(b), "[a]ny business . . . that compiles or maintains computerized records that include Personal Information on behalf of another business or public entity shall notify that business or public entity, who shall  notify  its  New  Jersey  customers  .  .  .  of any breach  of  security  of  the computerized records immediately following discovery, if the Personal Information was, or is reasonably believed to have been, accessed by an unauthorized person."

388.    Because Defendant discovered a breach of its security system in which Personal Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Personal Information was not secured, Defendant had an obligation to disclose the Security Incident in a timely and accurate fashion as mandated under N.J. Stat. Ann. §§ 56:8-163, *et seq.*

389.    By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated N.J. Stat. Ann. § 56:8-163(b).

390.    As a direct and proximate result of Defendant's violations of N.J. Stat. Ann. § 56:8-163(b), Plaintiff(s) and New Jersey Subclass members suffered the damages described above.

391.    Plaintiff(s) and New Jersey Subclass members seek relief under N.J. Stat. Ann. § 56:8-

19, including treble damages, attorneys' fees and costs, and injunctive relief.

**COUNT 26**
**NEW YORK INFORMATION SECURITY BREACH AND NOTIFICATION ACT**
**N.Y. Gen. Bus. Law § 899-aa**

392.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

393.    The New York Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the New York Subclass, bring this claim.

394.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by N.Y. Gen. Bus. Law § 899-aa(1)(a). Defendant also maintains computerized data that includes Private Information which Defendant does not own. Accordingly, it is subject to N.Y. Gen. Bus. Law §§ 899-aa(2) and (3).

395.    Plaintiff(s)' and New York Subclass members' Sensitive Data (*e.g.,* Social Security numbers) includes Private Information covered by N.Y. Gen. Bus. Law § 899-aa(1)(b).

396.    Defendant is required to give immediate notice of a breach of security of a data system to owners of Personal Information which Defendant does not own, including Plaintiff(s) and New York Subclass members, pursuant to N.Y. Gen. Bus. Law § 899-aa(3).

397.    Defendant is required to accurately notify Plaintiff(s) and New York Subclass members if it discovers a security breach or receives notice of a security breach which may have compromised Personal Information which Defendant owns  or licenses, in the most expedient time possible and without unreasonable delay under N.Y. Gen. Bus. Law § 899-aa(2).

398.    By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated N.Y. Gen. Bus. Law §§ 899-aa(2) and (3).

399.    As a direct and proximate result of Defendant's violations of N.Y. Gen. Bus. Law §§ 899-aa(2) and (3), Plaintiff(s) and New York Subclass members  suffered damages, as described above.

400.    Plaintiff(s) and New York Subclass members seek relief under N.Y.  Gen. Bus. Law §

85

899-aa(6)(b), including actual damages and injunctive relief.

**COUNT 27**
**NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law §§ 349, *et seq.***

401.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

402.    The New York Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the New York Subclass, bring this claim.

403.    Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, including:

   a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and New York Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

   b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

   c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and New York Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

   d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and New York Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures

   e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and New York Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

   f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and New York Subclass members' Sensitive Data; and

   g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

404.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

405.    Defendant acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiff(s) and New York Subclass members' rights. Defendant's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

406.    As a direct and proximate result of Defendant's deceptive and unlawful acts and practices, Plaintiff(s) and New York Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

407.    Defendant's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers and New York businesses affected by the Security Incident.

408.    The above deceptive and unlawful practices and acts by Defendant caused substantial injury to Plaintiff(s) and New York Subclass members that they could not reasonably avoid.

409.    Plaintiff(s) and New York Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

**COUNT 28**
**OREGON CONSUMER IDENTITY THEFT PROTECTION ACT**
**Or. Rev. Stat. §§ 646A.604(1),** *et seq.*

410.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

411.    The Oregon Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this

87

Count only) and on behalf of the Oregon Subclass, bring this claim.

412.   Defendant is a business that maintains records which contain Personal Information, within the meaning of Or. Rev. Stat. § 646A.622(1), about Plaintiff(s) and Oregon Subclass members.

413.   Pursuant to Or. Rev. Stat. § 646A.622(1), a business "that maintains records which contain Personal Information" of an Oregon resident "shall implement and maintain reasonable security measures to protect those records  from unauthorized access, acquisition, destruction, use, modification or disclosure."

414.   Defendant violated Or. Rev. Stat. § 646A.622(1) by failing to implement reasonable measures to protect Plaintiff(s)' and Oregon Subclass members' Sensitive Data (including Personal Information).

415.   Defendant is a business that owns, maintains, or otherwise possesses data that includes consumers Personal Information as defined by Or. Rev. Stat. § 646A.604(1).

416.   Plaintiff(s)' and Oregon Subclass members' Sensitive Data includes Personal Information as covered under Or. Rev. Stat. § 646A.604(1).

417.   Defendant is required to accurately notify Plaintiff(s) and Oregon Subclass members if it becomes aware of a breach of its data security system in the most expeditious  time  possible  and without unreasonable delay under Or. Rev. Stat. § 646A.604(1).

418.   Because Defendant discovered a breach of its security system, it had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Or. Rev. Stat. § 646A.604(1).

419.   By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated Or. Rev. Stat. § 646A.604(1).

420.   Pursuant to Or. Rev. Stat. § 646A.604(9), violations of Or. Rev. Stat. §§  646A.604(1) and  646A.622(1)  are  unlawful  practices  under  Or.  Rev.  Stat. § 646.607.

421.   As a direct and proximate result of Defendant's violations of Or. Rev. Stat. §§ 646A.604(1) and 646A.622(1), Plaintiff(s) and Oregon Subclass members suffered damages, as described above.

422.   Plaintiff(s) and Oregon Subclass members seek relief under Or. Rev. Stat. § 646.638,

including actual damages, punitive damages, and injunctive relief.

## COUNT 29
## OREGON UNLAWFUL TRADE PRACTICES ACT
## Or. Rev. Stat. §§ 646.608, *et seq*.

423.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

424.    The Oregon Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only) and on behalf of the Oregon Subclass, bring this claim.

425.    Defendant is a "person," as defined by Or. Rev. Stat. § 646.605(4).

426.    Defendant engaged in the sale of "goods and services," as defined by Or. Rev. Stat. § 646.605(6)(a).

427.    Defendant sold "goods or services," as defined by Or. Rev. Stat. § 646.605(6)(a).

428.    Defendant advertised, offered, or sold goods or services in Oregon and  engaged in trade or commerce directly or indirectly affecting the people of Oregon.

429.    Defendant engaged in unlawful practices in the course of its business and occupation, in violation of Or. Rev. Stat. § 646.608, included the following:

   a.    Representing that its goods and services have approval, characteristics, uses, benefits, and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e);

   b.    Representing that its goods and services are of a particular standard or quality if they are of another, in violation of Or. Rev. Stat. § 646.608(1)(g);

   c.    Advertising its goods or services with intent not to provide them as advertised, in violation of Or. Rev. Stat. § 646.608(1)(i); and

   d.    Concurrent with tender or delivery of its goods and services, failing to disclose any known material defect, in violation of  Or. Rev. Stat. § 646.608(1)(t).

430.    Defendant's unlawful practices include:

   a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Oregon Subclass members' Sensitive Data (including Personal Information), which was a direct and proximate cause of the Security Incident;

   b.    Failing to identify foreseeable security and privacy risks, remediate identified

89

security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Oregon Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Oregon's Consumer Identity Theft Protection Act, Or. Rev. Stat. §§ 646A.600, *et seq.*, which was a direct and proximate cause of the Security Incident;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Oregon Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Oregon Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Oregon's Consumer Identity Theft Protection Act, Or. Rev. Stat. §§ 646A.600, *et seq.*;

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Oregon Subclass members' Sensitive Data; and

g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Oregon Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Oregon's Consumer Identity Theft Protection Act, Or. Rev. Stat. §§ 646A.600, *et seq.*

431.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

432.    Defendant intended to mislead Plaintiff(s) and Oregon Subclass members and induce them to rely on its misrepresentations and omissions.

433.    Had Defendant disclosed to Plaintiff(s)s and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Oregon

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

Subclass. Defendant accepted the responsibility of hosting and keeping Sensitive Data secure while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Georgia Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

434.    Defendant acted intentionally, knowingly, and maliciously to violate Oregon's Unlawful Trade Practices Act, and recklessly disregarded Plaintiff(s) and Oregon Subclass members' rights.

435.    As a direct and proximate result of Defendant's unlawful practices, Plaintiff(s) and Oregon Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

436.    Plaintiff(s) and Oregon Subclass members seek all monetary and non-monetary relief allowed by law, including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), punitive damages, and reasonable attorneys' fees and costs.

## COUNT 30
## PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq*.

437.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

438.    The Pennsylvania Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Pennsylvania Subclass, bring this claim.

439.    Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2). 1128. Plaintiff(s) and Pennsylvania Subclass members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or business purposes.

440.    Defendant Pennsylvania engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following:

a.    Representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v));

b.    Representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii));

c.    Advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)); and

d.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 Pa. Stat. Ann. § 201-2(4)(xxi)).

441.    Defendant's unfair or deceptive acts and practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Pennsylvania Subclass members' Sensitive Data, which was a direct and proximate cause of the Security Incident;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Pennsylvania Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Pennsylvania Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Pennsylvania Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Pennsylvania Subclass members' Sensitive Data; and

g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Pennsylvania Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

92

442.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Sensitive Data.

443.    Defendant intended to mislead Plaintiff(s) and Pennsylvania Subclass members and induce them to rely on its misrepresentations and omissions.

444.    Had Defendant disclosed to Plaintiff(s) and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Pennsylvania Subclass. Defendant accepted the responsibility of hosting and keeping Sensitive Data secure while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Pennsylvania Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

445.    Defendant acted intentionally, knowingly, willfully, wantonly, outrageously, and maliciously to violate Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff(s) and Pennsylvania Subclass members' rights.

446.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices and Plaintiff(s)' and the Pennsylvania Subclass' reliance on them, Plaintiff(s) and Pennsylvania Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

447.    Plaintiff(s) and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

**COUNT 31**
**TENNESSEE CONSUMER PROTECTION ACT**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***

448.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

449.    The Tennessee Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Tennessee Subclass, bring this claim.

450.    Plaintiffs bring this Count pursuant to Federal Rule of Civil Procedure 23, which, procedurally, displaces any state procedural statutory ban on class actions under the Tennessee Consumer Protection Act ("TCPA").

451.    Defendant is a "person," as defined by Tenn. Code § 47-18-103(18).

452.    Plaintiff(s) and Tennessee Subclass members are "consumers," as meant by Tenn. Code § 47-18-103(6).

453.    Defendant advertised and sold "goods" or "services" in "consumer transaction[s]," as defined by Tenn. Code §§ 47-18-103(8), (19) & (20).

454.    Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(20).

455.    The TCPA has declared certain unfair or deceptive acts or practices affecting the conduct of any trade or commerce unlawful. Tenn. Code § 47-18- 104.

456.    As shown by Defendant's own conduct and acts, Defendant has engaged in the following unfair and deceptive acts and practices prohibited by Tenn. Code § 47-18- 104, including:

> a.    Representing that goods or services have ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;

b.      Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

c.      Advertising goods or services with intent not to sell them as advertised;

d.      Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services;

457.    These unfair acts and practices violated duties imposed by laws, including but not limited to the Tenn. Code Ann. § 47-18-101, *et seq*.

458.    Defendant's deceptive acts and practices were directed at consumers.

459.    Defendant intended to mislead Plaintiff(s) and Tennessee Subclass members and induce them to rely on its misrepresentations and omissions.

460.    Defendant's deceptive conduct, acts, and practices are misleading in a material way because they fundamentally misrepresent the character of the services and goods provided, specifically as to the safety and security of Sensitive Data.

461.    Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions, as set forth in this Complaint, are material in that they relate to matters which reasonable persons, including Plaintiffs and members of the Tennessee Subclass, would attach importance to in making their decisions and/or conducting themselves regarding the services received from Defendant.

462.    As a direct and proximate result of Defendant's violations, Plaintiffs and the Tennessee Subclass Members suffered damages including, but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their Sensitive Data, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Data, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

theft, (v) the continued risk to their Sensitive Data, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Data in its continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the data breach for the remainder of the lives of Plaintiffs and Subclass Members, and (vii) the diminished value of Defendant's services they received.

463.    As a further direct result of Defendant's violations of the TCPA, Plaintiffs and members of the Tennessee Subclass are entitled to damages as well as injunctive relief, including, but not limited to, ordering Defendant to immediately provide adequate credit monitoring to all Class Members.

464.    Plaintiffs brings this action on behalf of themselves and Tennessee Subclass Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs, Tennessee Subclass Members and the public from Defendant's unfair, deceptive, and unlawful practices. Defendant's wrongful conduct as alleged in this amended Complaint has had a widespread impact on the public at large.

465.    Defendant knew or should have known that its computer systems and data security practices were inadequate and that the risk of a data security incident was high.

466.    Plaintiffs and Tennessee Subclass Members were injured because: a) they would not use Defendant's cloud computing and hosting services had they known the true nature and character of Defendant's data security practices, b) Plaintiffs and Tennessee Subclass Members would not have entrusted their Sensitive Data to Defendant in the absence of promises that Defendant would keep their information reasonably secure, and c) Plaintiffs and Tennessee Subclass Members would not have entrusted their Sensitive Data to Defendant in the absence of the promise to ensure that it adopted reasonable data security measures.

467.    As a result, Plaintiffs and Tennessee Subclass Members have been damaged in an amount to be proven at trial.

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

468.    On behalf of themselves and other members of the Tennessee Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages, three times actual damages, and reasonable attorneys' fees.

## COUNT 32
## TENNESSEE PERSONAL CONSUMER INFORMATION RELEASE ACT
### Tenn. Code Ann. §§ 47-18-2107, *et seq.*

469.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

470.    The Tennessee Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Tennessee Subclass, bring this claim.

471.    Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Tenn. Code Ann. § 47-18-2107(a)(2).

472.    Plaintiff(s)' and Tennessee Subclass members' Sensitive Data (*e.g.*, Social Security numbers) include Personal Information as covered under Tenn. Code Ann. § 47-18-2107(a)(3)(A).

473.    Defendant is required to accurately notify Plaintiff(s) and Tennessee Subclass members following discovery or notification of a breach of its data security system in which unencrypted Sensitive Data was, or is reasonably believed to have been, acquired by an unauthorized person, in the most expedient time possible and without unreasonable delay under Tenn. Code Ann. § 47-18-2107(b).

474.    Because Defendant discovered a breach of its security system in which unencrypted Sensitive Data was, or is reasonably believed to have been, acquired by an unauthorized person, Defendant had an obligation to disclose the Security Incident in a timely and accurate fashion as mandated by Tenn. Code Ann. § 47-18-2107(b).

475.    By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated Tenn. Code Ann. § 47-18-2107(b).

476.    As a direct and proximate result of Defendant's violations of Tenn. Code Ann. § 47-18-2107(b), Plaintiff(s) and Tennessee Subclass members suffered damages, as described above.

477.    Plaintiff(s) and Tennessee Subclass members seek relief under Tenn. Code Ann. §§ 47-

18-2107(h), 47-18-2104(d), and 47-18-2104(f), including actual damages, injunctive relief, and treble damages.

## COUNT 33
### TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT
### Texas Bus. & Com. Code §§ 17.41, *et seq.*

478.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

479.    The Texas Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Texas Subclass, bring this claim.

480.    The DTPA makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

481.    Defendant is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

482.    Representative Plaintiff(s) and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

483.    Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

484.    Defendant engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

      a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

      b.    Representing that goods or services are of a particular standard, quality or grade, if they are of another;

      c.    Advertising goods or services with intent not to sell them as advertised; and

      d.    Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

485.    Defendant's false, misleading, and deceptive acts and practices include:

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

a.  Failing to implement and maintain reasonable security and privacy measures to protect Representative Plaintiff(s) and Texas Subclass members' Sensitive Data, which was a direct and proximate cause of the Security Incident;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Representative Plaintiff(s) and Texas Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the Security Incident;

d.  Misrepresenting that it would protect the privacy and confidentiality of Representative Plaintiff(s) and Texas Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Representative Plaintiff(s) and Texas Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Representative Plaintiff(s) and Texas Subclass members' Sensitive Data; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Representative Plaintiff(s) and Texas Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052.

486.    Defendant intended to mislead Representative Plaintiff(s) and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

487.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data/network security and ability to protect the confidentiality of consumers' Sensitive Data.

488.    Had Defendant disclosed to Representative Plaintiff(s) and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a responsible company that could be trusted with valuable

Sensitive Data regarding thousands of consumers, including Representative Plaintiff(s) and the Texas Subclass. Defendant accepted the responsibility of maintaining that Sensitive Data while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as such, Representative Plaintiff(s) and the Texas Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

489.    Defendant had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensivity of the Sensitive Data in its possession, and the generally accepted professional standards in its industry. Defendant's duty to disclose arose from its:

      a.    Possession of exclusive knowledge regarding the security of the data in its systems;

      b.    Active concealment of the state of its information technology and the security systems; and

      c.    Incomplete representations about the security and integrity of its systems while purposefully withholding material facts from Plaintiffs and the Texas subclass that contradicted these representations

490.    Defendant engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

491.    Consumers, including Representative Plaintiff(s) and Texas Subclass members, lacked knowledge about deficiencies in Defendant's data security because this information was known exclusively by Defendant. Consumers also lacked the ability, experience, or capacity to secure the Sensitive Data in Defendant's possession or to fully protect their interests with regard to their data. Representative Plaintiff(s) and Texas Subclass members lack expertise in information security matters and do not have access to Defendant's systems in order to evaluate its security controls. Defendant took advantage of its special skill and access to Sensitive Data to hide its inability to protect the security and confidentiality of Representative Plaintiff(s) and Texas Subclass members' Sensitive Data.

492.    Defendant intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from Defendant's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The Security Incident, which resulted from Defendant's unconscionable business acts and practices, exposed Representative Plaintiff(s) and Texas Subclass members to a wholly unwarranted risk to the safety of their Sensitive Data and the security of their identities, financial information or PII, and worked a substantial hardship on a significant number of consumers. Representative Plaintiff(s) and Texas Subclass members cannot mitigate this unfairness because they cannot undo the Security Incident.

493.    Defendant acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Representative Plaintiff(s) and Texas Subclass members' rights.

494.    As a direct and proximate result of Defendant's unconscionable and deceptive acts or practices, Representative Plaintiff(s) and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data, overpayment for Defendant's services, loss of the value of access to their private information, and the value of identity protection services made necessary by the breach. Defendant's unconscionable and deceptive acts or practices were a producing cause of Representative Plaintiff(s)' and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

495.    Defendant's violations present a continuing risk to Representative Plaintiff(s) and Texas Subclass members as well as to the general public.

496.    Representative Plaintiff(s) and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees,

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

injunctive relief and any other relief which the court deems proper.

## COUNT 34
## VIRGINIA PERSONAL INFORMATION BREACH NOTIFICATION ACT
### Va. Code. Ann. §§ 18.2-186.6, *et seq.*

497.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

498.    The Virginia Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Virginia Subclass, bring this claim.

499.    Defendant is required to accurately notify Plaintiff(s) and Virginia Subclass members following discovery or notification of a breach of its data security system if unencrypted or unredacted Personal Information was or is reasonably believed to have been accessed and acquired by an unauthorized person who will, or it is reasonably believed who will, engage in identify theft or another fraud, without unreasonable delay under Va. Code Ann. § 18.2-186.6(B).

500.    Defendant is an entity that owns or licenses computerized data that includes "personal information" as defined by Va. Code Ann. § 18.2-186.6(B).

501.    Plaintiff(s)' and Virginia Subclass members' Sensitive Data includes Personal Information as covered under Va. Code Ann. § 18.2-186.6(A).

502.    Because Defendant discovered a breach of its security system in which unencrypted or unredacted Sensitive Data was or is reasonably believed to have been accessed and acquired by an unauthorized person, who will, or it is reasonably believed who will, engage in identify theft or another fraud, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Va. Code Ann. § 18.2-186.6(B).

503.    By failing to disclose the Security Incident in a timely and accurate manner, Defendant violated Va. Code Ann. § 18.2-186.6(B).

504.    As a direct and proximate result of Defendant's violations of Va. Code Ann. § 18.2-186.6(B), Plaintiff(s) and Virginia Subclass members suffered damages, as described above.

505.    Plaintiff(s) and Virginia Subclass members seek relief under Va. Code Ann. § 18.2-

186.6(I), including actual damages.

## COUNT 35
## VIRGINIA CONSUMER PROTECTION ACT
### Va. Code Ann. §§ 59.1-196, *et seq.*

506.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

507.    The Virginia Plaintiff(s), individually (hereinafter "Plaintiff(s)" for purposes of this Count only), and on behalf of the Virginia Subclass, bring this claim.

508.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

509.    Defendant is a "person" as defined by Va. Code Ann. § 59.1-198. 1323. Defendant is a "supplier," as defined by Va. Code Ann. § 59.1-198.

510.    Defendant engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendant advertised, offered, or sold goods or services used primarily for personal, family or business purposes.

511.    Defendant engaged in deceptive acts and practices by using deception, fraud,  false pretense,  false  promise,  and  misrepresentation  in  connection  with  consumer  transactions, including:

      a.      Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff(s) and Virginia Subclass members' Sensitive Data, which was a direct and proximate cause of the Security Incident;

      b.      Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Security Incident;

      c.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Virginia Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Security Incident;

      d.      Misrepresenting that it would protect the privacy and confidentiality of Plaintiff(s) and Virginia Subclass members' Sensitive Data, including by implementing and maintaining reasonable security measures;

      e.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Virginia Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

      f.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff(s) and Virginia Subclass members' Sensitive Data; and

      g.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff(s) and Virginia Subclass members' Sensitive Data, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

512.    Defendant intended to mislead Plaintiff(s) and Virginia Subclass members and induce them to rely on its misrepresentations and omissions.

513.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff(s) and Virginia Subclass members, about the adequacy of Defendant's computer and data security and the quality of the Defendant brand.

514.    Had Defendant disclosed to Plaintiff(s) and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a large, sophisticated corporation with the resources to put adequate data security protocols in place–indeed, a "trusted adviser"–that could be trusted with valuable Sensitive Data regarding thousands of consumers, including Plaintiff(s) and the Virginia Subclass. Defendant accepted the responsibility of hosting and keeping Sensitive Data secure while keeping the inadequate state of its security controls secret from the public. Accordingly, because Defendant held itself out as having the ability to maintain a secure environment for users' email accounts with a corresponding duty of trustworthiness and care, Plaintiff(s) and the Virginia Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

515.    In Defendant had a duty to disclose these facts due to the circumstances of this case, the sensitivity and extensivity of the Sensitive Data in its possession, and the generally accepted professional standards in its industry. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiff(s) and the Virginia Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendant. Defendant's duty to disclose also arose from its:

516.    Possession of exclusive knowledge regarding the security of the data in its systems;

    a.    Active concealment of the state of its security; and/or

    b.    Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiff(s) and the Virginia Subclass that contradicted these representations.

517.    The above-described deceptive acts and practices also violated the following provisions of VA Code § 59.1-200(A):

    a.    Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

    b.    Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and

    c.    Advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

518.    Defendant acted intentionally, knowingly, and maliciously to violate Virginia's Consumer Protection Act, and recklessly disregarded Plaintiff(s) and Virginia Subclass members' rights. An award of punitive damages would serve to punish Defendant for its wrongdoing and warn or deter others from engaging in similar conduct.

519.    As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff(s) and Virginia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Sensitive Data.

520.    Defendant's violations present a continuing risk to Plaintiff(s) and Virginia Subclass

members as well as to the general public.

521.    Plaintiff(s) and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages in  the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## JURY DEMAND

Representative Plaintiffs, individually, and on behalf of the Plaintiff Class(es) and/or Subclass(es), hereby demand a trial by jury for all issues triable by jury.

## REQUEST FOR RELIEF

WHEREFORE, Representative Plaintiffs, individually and on behalf of members of the National Class and state Subclasses, as applicable, respectfully request that the Court enter judgment in  their favor and against Defendant, as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiff(s)' counsel as Class Counsel;

2.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.    That the Court enjoin Defendant, ordering it to cease and desist from unlawful activities;

4.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiffs' and Class Members' Sensitive Data, and from refusing to issue prompt, complete, any accurate disclosures to Representative Plaintiffs and Class Members;

5.    For injunctive relief requested by Representative Plaintiffs, including but not limited

to, injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiffs and Class Members, including but not limited to an Order:

a.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b.  requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c.  requiring Defendant to delete and purge the Sensitive Data of Representative Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiffs and Class Members;

d.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiffs' and Class Members' Sensitive Data;

e.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

f.  prohibiting Defendant from maintaining Representative Plaintiffs' and Class Members' Sensitive Data on a cloud-based database;

g.  requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.  requiring Defendant to conduct regular database scanning and securing checks;

i.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Sensitive Data, as well as protecting the Sensitive Data of Representative Plaintiffs and Class Members;

j.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

k.  requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated;

l.  requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of its confidential personal

       identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.     For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.     For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

8.     For all other Orders, findings, and determinations identified and sought in this Complaint.

Respectfully submitted,

Dated: December 13, 2022          **COLE & VAN NOTE**

                  */s/Scott Edward Cole*
                  Scott Edward Cole, Esq. (admitted *pro hac vice*)
                  (CA S.B. #160744)
                  Laura Van Note, Esq. (admitted *pro hac vice*)
                  (CA S.B. #310160)
                  Cody Bolce, Esq. (admitted *pro hac vice*)
                  (CA S.B. #322725)
                  555 12th Street, Suite 1725
                  Oakland, CA 94607
                  (510) 891-9800

                  *Interim Lead Class Counsel*

                  Ronald W. Armstrong, II, Esq. (S.B. # 24059394)
                  **THE ARMSTRONG FIRM, PLLC**
                  310 S. Saint Mary's, Suite 2700
                  Antonio, Texas, 78205
                  (210) 277-0542

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 13th day of December 2022.

*/s/Scott Edward Cole*

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT